The First National Bank of Mankato v. Parsons et al.

### THE FIRST NATIONAL BANK OF MANKATO

*vs.*

### L. D. PARSONS, *et al.*

Defendant and T were copartners. On dissolution they divided the assets of the firm, except a note for which the note in suit was given.

The latter was afterwards endorsed by T, with the late firm name, under a mistake of the law on the part of plaintiff and T. as to his authority so to do, T having no authority from defendant to make such indorsement. The plaintiff then discounted the note, and T received one-half the proceeds. Afterwards the defendant, before said note fell due, demanded and received the balance of the proceeds, knowing that it had been discounted. *Held,* that defendant's knowledge that the note had been discounted, sufficiently appears from the findings of fact by the court below, by which the case was tried without a jury, and that said findings

The First National Bank of Mankato v. Parsons et al.

sustain its conclusions of law that the defendant was liable. *Held*, also, that inasmuch as defendant could not plead ignorance of the fact that the note had been so discounted, after it had been dishonored and notice of protest had been served upon him, his keeping the money thereafter was unquestionably a ratification of such indorsement.

This action was brought in the district court for Blue Earth county against the makers and endorsers of a promissory note, bearing date August 15, 1869, payable one year thereafter to the order of Thompson & Parsons, and endorsed in the name of that firm. The defendant Parsons alone answered the complaint. The action was tried by the court, a jury being waived, and the judge found the following facts :

" Defendant and Thompson were co-partners in business at Mankato, but dissolved the fore part of May, 1867. They settled and divided their outstanding debts due them except a note, for which the note upon which suit is brought was given. The latter note was left with the plaintiff for collection, and the plaintiff was then requested to discount the same, but did not. On the 10th of March, 1870, it was endorsed by Thompson with the late firm name of Thompson & Parsons, under a mistake of the law on the part of the plaintiff and Thompson as to his authority so to do, Thompson having no authority from Parsons to make such endorsement. Thompson then received one-half the proceeds of the note. About the 30th day of May, 1870, Parsons got the balance of the proceeds, testifying at the trial that he thought at the time that the money had been collected on the note, and did not know that it had been discounted."

The findings of law were as follows : " I find as matter of law that * * * the defendant Parsons is liable for the half of the amount of the note; being what he received on said discounting of the note. I think Parsons should have ascertained, before he received the money, from what source it

The First National Bank of Mankato v. Parsons et al.

came, and that he is therefore estopped from denying that he knew said note had been discounted."

Judgment was ordered and entered in accordance with the findings, from which judgment the defendant Parsons appeals. No case or bill of exceptions is contained in the return to this court.

Brown & Wiswell, for Appellant.

M. S. Wilkinson, for Respondent.

*By the Court.*—Ripley, Ch. J.—As there is no case or bill of exceptions, we have only to inquire whether there is any warrant for the judgment of the court below to be found in the facts as found by it.    *St. Paul vs. Kuby,* 8 *Minn.* 154.

It is to be remembered, however, that the judgments of subordinate courts are presumed to be right, unless it appears that some rule of law has been violated, after assuming that the facts have been viewed in the most favorable light that the case will admit of.    *Grant vs. Morse,* 22 *N. Y.* 323.

So, it is also said in the same case, that " the party appealing must make his case and have it settled with such a statement of the facts as will show necessarily that the law is in his favor.    If he does not, every intendment not absolutely unreasonable, will be made against him."    If he does not see fit to make a case, he cannot expect to have a more favorable rule applied to the findings of the court.

The findings must be construed to mean that the plaintiff, in March, 1870, at Thompson's request, discounted the note in question, upon his endorsing it with the late firm name of Thompson & Parsons, under the supposition, in which Thompson shared, that it thereby acquired the conditional obligation of Thompson & Parsons as endorsers, and thereupon holding the proceeds of such discount for them as their property.

But that this was under the mistaken belief, that Thompson had, in law, the power, by thus indorsing the note, to bind Parsons; Parsons not having, in fact, authorized Thompson so to indorse the note, and the plaintiff not supposing that he had.

The district judge, indeed, does not expressly find that the plaintiff was aware that Thompson had no authority, in point of fact, from Parsons to endorse the note; but the inference to that effect is unavoidable from the finding that the plaintiff discounted the note under a mistake of law as to Thompson's authority so to do, he having no authority from Parsons to make such endorsement. It is also true that the court does not find, in terms, that the plaintiff *discounted* the note; but that also is necessarily implied from the statements that Parsons "testified that he did not know that it had been discounted;" that he is liable "for what he received on such discounting."

Parsons is sued as an indorser. The indorsement might become his by ratification. If a contract be made for one without authority, and the consideration be accepted and retained with full knowledge, it is a ratification. 1 *Amer. Lead. Cases*, 593; *Bryant vs. Moore*, 26 *Me.* 84. But knowledge is material. Receiving money generally, and without knowledge that it is paid on the contract, is no ratification. *Roach vs. Coe*, 1 *E. D. Smith*, 175.

It is not expressly found as a fact that Parsons knew, when he received the money, that the note had been discounted. These findings are indeed very defective; but it is evident that the court below held Parsons chargeable with such knowledge, and based its conclusions of law thereon. But the appellant can have no advantage of the fact that the findings are not sufficiently definite. It is the duty of the party who is not satisfied with them, to apply for more specific

findings, and not seek to avail himself of such defects. *Brainerd vs. Dunning*, 30 *N. Y.* 211.

It can make no difference practically, whether the court finds the fact that Parsons knew the note had been discounted, and thereupon finds him liable, or expresses its opinion that Parsons was estopped in law from denying it, and thereupon finds him liable. In either case the judgment proceeds upon the fact of knowledge.

In the latter case, however, it may be said that the court *infers* knowledge from what *is* stated in the findings, and that this will not support the inference. But to this it may be replied, in the first place, that, for aught that appears, this opinion of the court below may be based upon other evidence besides the facts found. If the facts found will not justify the opinion, we cannot presume, in the absence of a case, that it was not warranted by the evidence.

But, in the next place, we think that Parsons' knowledge may properly be inferred from the facts expressly found.

It is true that the court below states that Parsons testified that he thought, at the time, that the note had been collected, and did not know that it had been discounted; but this is simply a statement of a part of the evidence, not a finding from the evidence as to how the fact was.

The appellant can have no benefit of any such matter. *Lane vs. Borst*, 5 *Rob.* 609; *Goenen vs. Schroeder*, 18 *Minn.* 66. There may have been evidence which would prove Parsons' knowledge, his statement aforesaid to the contrary notwithstanding.

Without considering at length the facts found, the grounds of our opinion above stated may be briefly stated as follows: Thompson at the time of discounting received half the proceeds of the note. Whatever the rate of discount may have

been, the proceeds thereof would differ from the amount receivable upon such note if it had been paid by the makers.

Parsons " got the balance of the proceeds " in May, *i. e.*, before it was due.   He states in his brief that, " having learned that Thompson had received his share of the amount of the note, he went to the plaintiff and demanded and received his half."

In our opinion, it is not a construction of the above language of the finding, of which he can complain, to say that he " demanded and received " the balance of the proceeds.

If Parsons' testimony aforesaid were properly before us, no weight, in our opinion, would be due to it under the facts and circumstances appearing in the case ; but as it is not, there can be no doubt whatever that, in " demanding and receiving the balance of the proceeds," he did demand, and meant to demand, and intended to receive the half of the proceeds of the discount ; that is to say, he received the money with full knowledge of the facts.

The note not being due, he could not have supposed it had been collected, in the proper sense of that word, and there is no pretence that he supposed it had been voluntarily paid before due.   The only rational interpretation of his demand of "the balance of the proceeds" is, therefore, that it was a demand of half the discount.   Moreover, since half the proceeds of a discount, is neither half the proceeds of a collection, properly so called, or of a voluntary payment by the makers before maturity, the receipt of such sum by Parsons is entirely inconsistent with the retention of any previous belief by him, if he had such, that the note had been collected or paid.

It is further to be considered in this case that Parsons kept the money long after his ignorance, if ignorance had been possible under the facts and circumstances within his knowledge, must have been dispelled.   When the note fell due it

was not paid, and notice of protest was served upon him, and this action was commenced some eight months afterwards. So long, at least, then, with full knowledge of the facts, he kept money derived from the transaction, which he now asserts he never authorized. There can be no question but what he had ratified it, and was bound by said indorsement, and liable thereon at the time this suit was commenced.

Judgment affirmed.