MEADOWCRAFT ET AL., RESPONDENT, *v.* WALSH, APPELLANT.

[Submitted March 12, 1895. Decided March 25, 1895.]

APPEAL—*Findings of fact.*—Where the testimony in the record fails satisfactorily to show that the findings of fact are against the weight of evidence they must stand as approved by the trial judge.

ASSIGNMENT—*Action by assignee in insolvency.*—An assignee for the benefit of creditors may sue in trover to recover promissory notes from the assignor, whose duty it was to deliver them to the assignee.

SAME—*Transfer of note by member of insolvent firm—Protection to maker of note.*—Where a promissory note executed to a firm is transferred by one of the partners, after the firm makes an assignment for the benefit of creditors, and the proceeds are applied to such partner's individual debts, which acts the other partner ratifies, the maker cannot complain of such transfer of the note, since he is amply protected against any possible subsequent claim the firm or the ratifying partner may have against him.

PROMISSORY NOTE—*Title of transferee.*—The holder of a promissory note is presumptively the owner, and may sue thereon in his own name as the real party in interest. (*Fultz* v. *Walters*, 2 Mont. 165, cited.)

SAME—*Protection to bona fide purchaser.*—One who, in good faith, purchases a promissory note from a member of a firm, subsequent to and without knowledge of an assignment by the firm for the benefit of creditors, which note had never been delivered to the assignee in insolvency, as required by section 226, division 5, of the Compiled Statutes, is not affected by such assignment, and is the real party in interest entitled to bring suit on the note.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION upon promissory notes. Judgment was rendered in favor of the plaintiffs by BUCK, J. Affirmed.

Statement of the case by the justice delivering the opinion:

Action by plaintiffs to recover amounts due on four promissory notes made by defendant. One note for one hundred and ten dollars, and interest, was made and delivered May 1, 1885, to the firm of Jurgens & Price. To escape the statute of limitations plaintiffs plead the payment on said note of twenty-

five dollars, made December 8, 1890. Another note made on February 8, 1888, was delivered to one Dennis Hayes, who transferred it to Jurgens & Price. The third and fourth note sued on were delivered to Jurgens & Price. All the notes were indorsed by Jurgens & Price after maturity, in blank, before suit, and transferred to plaintiffs, who are the actual holders thereof.

Defendant denied the transfer of the May, 1885, note, denied the indorsement thereon, and pleads the statute of limitations as a bar to a recovery. He denied that any of the other notes were transferred by Jurgens & Price to plaintiffs before suit, or that plaintiffs ever owned the said notes.

By replication plaintiff denied the bar of limitations as to the first note.

Plaintiffs, bankers in Chicago, became the holders of the notes by discounting them for one R. P. Price, a brother of Bennett Price of the firm of Jurgens & Price, on August 26, 1891. They were discounted when first presented, and have never been out of plaintiffs' possession, except when sent for collection to Helena. Plaintiff's, in discounting the notes, knew nothing of the insolvency of Jurgens & Price, the assignors.

The note of May, 1885, had a payment indorsed thereon of twenty-five dollars in 1890. Jurgens & Price made an assignment for the benefit of their creditors to S. E. Atkinson, June 7, 1889. The notes were indorsed by Price, in the name of the firm, in August, 1891, in Chicago, and were sold by Bennett Price to R. P. Price, his brother, for five hundred dollars. The notes were never delivered to the assignee, Atkinson, in person, although they were in the safe of Jurgens & Price just about the time of the assignment. Bennett Price testified for defendant that Casey, his attorney, he thought, delivered these notes in suit to Dave Price, a nephew of witness, to keep safely. The notes were in the safe of Jurgens & Price on the day of the assignment, and the safe was in charge of Dave Price, who had been in the firm's employ, and who continued in the assignee's service. The notes were in one drawer where witness had his papers. Witness claimed that he always had had the notes in his possession, and that these

notes were his individual property, and not the property of the firm of Jurgens & Price. They were left with Dave Price for safekeeping, and witness took them from the safe himself on the evening of the assignment. They may have been with other notes that belonged to the firm. Witness had the keys and combination of the safe, and did not deliver the keys to the assignee. No entry was ever made on the books of Jurgens & Price concerning these notes.

On rebuttal witness testified that he took these notes out of the safe of Jurgens & Price before the assignment was completed, considering them his individual property, and delivered them to his attorney that evening. The attorney delivered them to Dave Price for safekeeping.

J. H. Jurgens, called by the defendant, testified that what was found of the partnership effects and property after the execution of the assignment was turned over to the assignee with the papers of the assignment. There was no understanding that one partner was to bind the other after that, and no formal notice of dissolution. Witness knew but little of the Walsh notes; had seen them; did not know of the notes being turned over to the assignee, or where they were. The firm notes were kept in the safe. Dave Price, a nephew of Bennett, represented the assignee after the assignment; had the keys to the safe, although there were other keys.

On cross-examination he testified that neither of them ever did any act with the intention of dissolving the firm.

In response to questions by the court, Jurgens said: "I did not know of the transfer of these notes. I think I knew of these notes being withheld from the assignee, and that Price had such papers. I have never received any benefit from the notes. The firm is not now in existence. Mr. Price had more in the firm than I had. I never objected to Price assigning these notes. I was perfectly willing he should. I first learned about these notes when they were sent out here for collection. Walsh told me. That was the first knowledge I had that Price had transferred the notes. It might be that Price told me that he had transferred them, but I paid no attention to it because he and Walsh had dealings together. I was perfectly

satisfied with whatever Price did in the matter.    He sacrificed some individual property by the assignment."

There was testimony on behalf of defendant denying his consent to the credit of twenty-five dollars on the May, 1885, note, and evidence proving that the indorsement made allowing said credit, and the indorsements on the said notes of the firm name of Jurgens & Price, were all in violet ink, and that in the lifetime of Casey, attorney for Price, violet ink was used in the office of Casey & Smith, attorneys, but Bennett Price denied that the indorsements were made at the same time, or that there was any wrongful act done by him.

Special issues were submitted to the jury, wherein they found that the indorsement of twenty-five dollars was made in obedience to the agreement between Walsh and Price; that the notes in suit were not in the Jurgens & Price safe at the time the assignee of Jurgens & Price took possession thereof; that the notes were never in the possession of the assignee in person or by agent after the assignment.    A general verdict was also rendered for plaintiffs.    The defendant moved to set aside the verdict and findings and for a new trial.    This motion was overruled.    Judgment was entered for plaintiffs.    Defendant appeals from the judgment and from the order denying the motion for new trial.

*A. C. Botkin,* and *Theo Shed,* for Appellant.

*Henry C. Smith,* for Respondents.

The taking of these notes by Price was ratified by his partner, Jurgens.    (*Bank of Mankato* v. *Parsons,* 19 Minn. 289.) Price had the power to transfer these notes to an innocent purchaser, even after dissolution.    (*King* v. *Smith,* 4 Car. & P. 108; *Cony* v. *Wheelock,* 33 Me. 366; *Pitcher* v. *Barrows,* 17 Pick. 361.)    The maker of a note cannot set up a fraudulent transfer as a defense.    (2 Randolph on Commercial Paper, § 694; *Tillman* v. *Walkup,* 7 S. C. 60; *Kinney* v. *Kruse,* 28 Wis. 183; *Lingg* v. *Plummer,* 88 Pa. St. 518; *Wood* v. *Steele,* 65 Ala. 436; *Atkinson* v. *Runnells,* 60 Me. 440; *Hayward* v. *Stearns,* 39 Cal. 58; *Duke* v. *Clark,* 58 Miss. 465; *Robinson* v. *Lyman,* 10 Conn. 30; *Arnot* v. *Woodburn,* 35 Mo. 99; *Murrell*

v. *Jones,* 40 Miss. 565; *Palmer* v. *Marshall,* 60 Ill. 289; *Sheridan* v. *Mayor etc.,* 68 N. Y. 30.)    Indorsement is mere matter of form, and legal title may be had without it.    (*Brown* v. *McHugh,* 35 Mich. 50; *Williams* v. *Matthews,* 2 Conn. 252; *Emerson* v. *Cutts,* 12 Mass. 78; *Little* v. *O'Brien,* 9 Mass. 422; *Mauran* v. *Lamb,* 7 Conn. 174.)    Unless the appellant had some defense to the note itself it would make no difference whether the plaintiffs owned it absolutely or not.    (*Scionneaux* v. *Wagnespack,* 32 La. Ann. 283.)    The assignment for the benefit of creditors did not operate *ipso facto* a dissolution of the firm, and Price was authorized to make the indorsements. (*Williston* v. *Camp,* 9 Mont. 88.)    The assignee had no power to sue either for or on these notes.    (*Francisco* v. *Aguirre,* 94 Cal. 180.)

HUNT, J.—An attentive examination of the testimony in this record fails to satisfy us that the findings of fact are against the weight of evidence.    By the authority of this court they must therefore stand as approved by the trial judge.

The issue of the statute of limitations is at once disposed by the fact that on December 20, 1890, defendant was given a credit of twenty-five dollars, with his consent, on the note of May, 1885.

The assignment for the benefit of creditors, made by Jurgens & Price on June 7, 1889, included "promissory notes, debts, choses in action, etc., belonging to said parties of the first part (Jurgens & Price),   or either of them,  . . . .  now due or payable, or to become payable."

Under its provisions it was the duty of Price, as a member of the insolvent firm, to deliver to the assignee, for the benefit of creditors, the notes involved in this action, and, failing to do so, doubtless the assignee could have brought suit in trover to recover them from him.    The appellant's authorities sustain this proposition.    (*Cooper* v. *Perdue* (Ind.), 16 N. E. Rep. 140; *Burrows* v. *Keays,* 37 Mich. 430.)

But as the case is presented, the assignee never received the notes, and never made demand upon either member of the firm of Jurgens & Price for them.    Ben Price retained them in his possession until 1891, when they passed into the hands of these

plaintiffs as innocent purchasers for a valuable consideration. Whether Price's conduct in failing to deliver the notes to Atkinson, assignee of the firm of Jurgens & Price, was intentionally wrong, is a close question, but, as its determination, depended upon the credibility of the witnesses, we cannot say that bad faith characterized his conduct. The apparent acquiescence of the assignee in Price's claim to the notes for so long a time, and the fact that he has not intervened in this suit, tend to prove that the assignee neither asserted title to the notes, nor claimed any legal ownership of them. These facts also tend to sustain the *bona fides* of Price.

But, appellant argues, Ben Price could not transfer the notes, because, by virtue of the assignment of Jurgens & Price in 1889, the firm of Jurgens & Price was dissolved. To support this contention appellant cites several cases which hold that a general assignment by a firm for the benefit of creditors by itself works a dissolution of the copartnership. *Williston* v. *Camp*, 9 Mont. 89, did not positively decide the point, but, as we construe the opinion of Justice De Wolfe in that case, the court lean to the doctrine that an assignment by a firm does not necessarily dissolve the copartnership, but is only *prima facie* evidence of a dissolution. A discussion of the question is unnecessary, however, in this case, for we are of the opinion that whether the firm was entirely dissolved or not is quite unimportant in view of the positive evidence of Jurgens, who, on the witness-stand, ratified every act of Price, not only in indorsing the firm's name, but also in transferring the notes, and applying their proceeds in payment of Price's individual debts. Under such a state of facts the defendant herein cannot complain of the transfer of the notes by Price, for he is amply protected against any possible subsequent claim the firm or Jurgens may have against him. (*Coney* v. *Wheelock*, 33 Me. 366; *First Nat. Bank of Mankato* v. *Parsons*, 19 Minn. 289; *Major* v. *Hawkes*, 12 Ill. 297; Bates on Partnership, § 698; *Graves* v. *Merry*, 6 Cow. 701.)

Defendant finally contends that the notes became the property of the assignee by virtue of the assignment. This is substantially a plea that plaintiffs are not the real parties in interest, but that the notes belong to and are the property of

the assignee. But as against the defendant, the maker, the argument is not tenable. The holders of the notes are presumptively the owners, and their possession is presumptive evidence of their title, until rebutted by the defendant. (*Whiteford* v. *Burching*, 1 Gill. 127; Pomeroy's Code Remedies, § 128, et seq; *Palmer* v. *Nassau Bank*, 78 Ill. 380; *New Orleans Banking Co.* v. *Bailey*, 18 La. Ann. 676; 2 Randolph on Commercial Paper, § 707; Daniell on Negotiable Instruments, §§ 1191, 1192 *b;* Story on Promissory Notes, § 381.) And until this presumption is overcome plaintiffs are *bona fide* purchasers for value, have a right to sue, and are the real parties in interest. (*Klein* v. *Buckner*, 30 La. Ann. 680; *Robertson* v. *Dunn*, 87 N. C. 191; *Hesser* v. *Dran*, 41 Iowa, 468; *Herrick* v. *Bromside*, 56 Md. 439; *McCann* v. *Lewis*, 9 Cal. 246.)

We adopt the construction placed upon section 4 of our Code of Civil Procedure by the court of appeals of New York, in *Hays* v. *Hathorn*, 74 N. Y. 486, where the question of who is the real "party in interest," as applied to promissory notes, is ably discussed by Judge Hand. The action was on a promissory note made by Hathorn *et al.*, payable to the order of defendant, and by him indorsed and transferred to plaintiff. The answer denied the transfer to plaintiff, or that he was the legal owner or holder thereof, or that he was the real party in interest. The court review the earlier New York cases, and conclude as follows:

"From this glance at the cases it appears that it is ordinarily no defense to the party sued upon commercial paper to show that the transfer under which the plaintiff holds it is without consideration, or subject to equities between him and his assignor, or colorable and merely for the purpose of collection, or to secure a debt contracted by an agent without sufficient authority. It is sufficient to make the plaintiff the real party in interest if he have the legal title, either by written transfer or delivery, whatever may be the equities between him and his assignor. But, to be entitled to sue, he must now have the right of possession and ordinarily be the legal owner. Such ownership may be as equitable trustee; it may have been acquired without adequate consideration, but must be sufficient

to protect the defendant upon a recovery against him from a subsequent action by the assignor. As we understand the scope of the offer in the present case, it went to entirely disprove any ownership or interest whatever, or even right to possession as owner, in the plaintiff. It should therefore have been admitted. It may be true that the plaintiff, if this note had been delivered to him with the intent to transfer title, might have lawfully overwritten the blank indorsement with a transfer to himself; it is also true that the production of the paper by him was *prima facie* evidence that it had been delivered to him by the payee and that he had title to it, but the defendants' offer was precisely to rebut this very presumption, and, for aught that we can know, the evidence under it would have done so."

In *Lockwood* v. *Underwood,* 23 N. Y. Sup. Ct., the rule laid down in *Hays* v. *Hathor, supra,* is approved. And the decided weight of authority is that a note indorsed merely for collection passes such title as enables the indorsee, to sue in his own name, as the real party in interest. (*Roberts* v. *Parrish,* 17 Or. 583; *Cummings* v. *Cohn,* 12 Mo. App. 585; *Roberts* v. *Snow* (Neb.), 43 N. W. Rep. 241; *Winterwrite* v. *Torrent* (Mich.), 47 N. W. Rep. 359; *Wilson* v. *Tolson,* 79 Ga. 137; Daniell on Negotiable Instruments, § 698 *d,* and cases cited; *Moore* v. *Hall,* 48 Mich. 143; *Cottle* v. *Cole,* 20 Iowa, 481; *Freeman* v. *Falconer,* 45 N. Y. Sup. Ct. 383; Maxwell on Code Pleading, § 48.)

Plaintiffs having bought the notes after maturity, they were, of course, transferred without prejudice to any setoffs or other defenses existing at the time of or before notice of the assignment. But no such setoffs or defenses are claimed, other than that the plaintiffs are not the lawful holders of the notes, with a right to sue. Accordingly, it is of no importance to defendant who owns the notes, provided he is not liable to a second suit founded on the same claim. As was said in *Gage* v. *Kendall,* 15 Wend. 640: " Why should the defendant give himself the trouble to investigate the plaintiff's title? He owes the money to some one." (*Woodbury* v. *Hinckley,* 3 Col. App. 210; *Rohrer* v. *Turrill,* 4 Minn. 407; *Caldwell* v. *Lawrence,* 84

Ill. 161; 1 Parsons on Notes and Bills, § 262; Bliss on Code Pleading, § 51.)

It was decided in *Fultz* v. *Walters*, 2 Mont. 165, that promissory notes are to be regarded *themselves* as only personal chattels, collectible by and in the name of the holders and owners thereof. The possession, therefore, of the notes involved in this suit being in plaintiffs, who became purchasers in good faith, subsequent to the assignment of Jurgens & Price, by section 226, division 5, of the Compiled Statutes, any assignment of them as chattels, to be valid as against these plaintiffs, must have been accompanied by the immediate delivery, and by an actual and continued change of possession. The facts being that the notes never were delivered to the assignee, but did pass to the plaintiffs in good faith, and without knowledge of the assignment, plaintiffs are the real parties in interest.

Our conclusions are that defendant owes the notes; that he is thoroughly protected against any further liability upon them; that there is no merit in his defense, and that he must be held to his obligations. The judgment is affirmed.

*Affirmed.*

DE WITT, J., concurs.

