ROSSITER, APPELLANT, *v.* LOEBER, RESPONDENT.

[Submitted June 9, 1896. Decided June 15, 1896.]

PROMISSORY NOTE—*Action by endorsee—Duress—Bona fides—Order of proof.*—In an action by an indorsee of a promissory note in which the defendant pleaded want of consideration and duress and that the plaintiff had purchased the note after maturity with knowledge of such defenses, the endorsee is not obliged to show in his case in chief that he purchased the note without notice of such defenses; but may do so in rebuttal, after the defendant's evidence has made necessary an affirmative showing of good faith.

SAME—*Duress—Evidence.*—The defense of duress in the execution of a promissory note is established by uncontradicted evidence to the effect that defendant, who owned a fourth interest in a mine, which had been leased, was surrounded by a party of twelve or fifteen miners, employees of the lessee, who demanded a settlement of their wages; that one of the miners told defendant, that if he did not settle their claims right then he would shoot him, and another told him that if he got on the wagon they would pull him off; that defendant was then crowded by them into a room in a hotel and held there for two hours, being told when he tried to go out, that he could not leave until he settled; that a witness with defendant was told that he could go but if defendant attempted to make a move for the wagon, they would pull him off with a rope; that the witness communicated this threat to defendant, who then signed certain notes saying that he did so to get away.

SAME—*Duress and want of consideration—Instructions.*—Where duress and want of consideration were pleaded in defense to an action on a promissory note and duress was proved, it was error to charge the jury that it was incumbent upon the defendant to establish his defenses by a preponderance of the evidence, since defendant was not bound to prove both such defenses, nor by a preponderance of the evidence.

SAME—*Duress—Character of threats.*—Under a defense of duress, in the case at bar, the

question was not as to whether the threats were of such a character as to be likely to terrify a man of defendant's firmness, but whether the defendant, presumably of ordinary firmness, was actually threatened with violence or restraint, or was restrained and actually and reasonably in fear of personal injury or confinement, under the influence of which he acted in executing the note.

PLEADING—*Denial of knowledge sufficient to form a belief.*—A denial that as to certain facts stated, the pleader "has no knowledge or information sufficient to form a belief and therefore denies the same," is insufficient. (*State ex rel Milstead* v. *Butte City Water Co., ante,* page 199, cited.)

*Appeal from Second Judicial District, Silver Bow County.*

ACTION on promissory note. The cause was tried before McHATTON, J. Defendant had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

Action on a promissory note made by the defendant, Loeber, to William Schneider or order, for $350, dated October 8, 1891, and due on or before November 8, 1891.

Plaintiff alleged that on November 1, 1891, and before the note became due, the payee, Schneider, transferred the same by indorsement to plaintiff, and that plaintiff is now the owner and holder for value. Judgment is prayed for the face of the note, interest and costs.

Defendant admitted the execution of the note, and that it had not been paid, but denied that the note was transferred prior to maturity. Defendant further set up that the note was made and executed without consideration, and that it was made under duress by the payee and others, and that the plaintiff was cognizant of the fact that the note was made and executed without consideration and under duress, before the alleged purchase by him of the note.

The replication denied knowledge on the part of plaintiff concerning the alleged duress and lack of consideration and all other affirmative matter in the answer. Plaintiff also avers in his replication that the defendant admitted to the payee that the note was legal and valid, and promised to pay the same, and that plaintiff relied upon the truth of said statement, and that the defendant is now estopped from setting up the defense of duress.

There was a trial to a jury, and a verdict for the plaintiff.

Defendant moved for a new trial, and the motion was granted. Plaintiff appeals from the order sustaining the defendant's motion for a new trial.

*John W. Cotter*, for Appellant.

Defendant does not say that he was .in fear of any bodily harm, and his witness, Nickel, does not attempt to say so; on the contrary, the evidence of both of them simply shows that the men were only demanding their pay. Duress by threats must have caused actual fear of bodily harm, or of some grievous wrong. (*McClair* v. *Wilson*, 31 Pac. Rep. 502; *De La Cuesta* v. *Insurance Co.*, 9 L. R. A. 631; *Shuttuck* v. *Watson et ux.*, 7 L. R. A. 531; 5 Lawson on Rights, Remedies and Practice, §§ 2364-2395.) The evidence of the defendant and his witnesses further shows that Schneider was not present and took no part in the demonstration against defendant, nor in imposing any duress upon him. Duress must be imposed by the party himself, or with his knowledge or consent. (5 Lawson on Rights, Remedies and Practice, § 2367 and note.) Proof of circumstances that might excite suspicion are not sufficient to defeat plaintiff in this action. (*Farrell* v. *Lovett*, 68 Me. 236; *Witte* v. *Williams*, 28 Am. Rep. 298.) Instruction No. 1, complained of by defendant, informs the jury that every presumption is in favor of the note sued upon in the action, and if they find that it was executed and delivered by the defendant to the payee named therein for value, without any fraud, compulsion or duress, and was afterwards transferred to the plaintiff and is unpaid, they should find a verdict in plaintiff's favor. We submit that the instruction states the correct rule of law applicable to cases of this character. (19 Am. & Eng. Ency. of Law, page 78, note 3; *Witte* v. *Williams*, 28 Am. Rep. 294; *Goodman* v. *Simons*, 20 How. 343, L. E. 954; *Murray* v. *Lardner*, 2 Wall. 110; Abbott's Trial Evidence, page 404 ; 2 Wharton on Evidence, 1060.) A negotiable promissory note imports a consideration and the burden of proving want of consideration or duress is on the defendant. (*Lipsmeier* v. *Veshlage*, 29 Fed. 175, note; *Dean*

v. *Carrutt*, 108 Mass. 242; *Kneeland* v. *Lawrence Bros.*, 140 U. S. 200, L. E. 204; Story on Promissory Notes, § 7; Parsons' Notes and Bills, 185, 188, Note H, 193; 1 Rice on Evidence, page 143.)

*F. T. McBride,* for Respondent.

Duress consists not merely in the act of imprisonment or other hardship to which the party was subjected, but in the state of mind produced by these circumstances and in which the act sought to be avoided was done. (*Blair* v. *Coffman,* 5 Am. Dec. 659; *Hatter* v. *Greenlee,* 26 Am. Dec. 370 and note 374, 375 and 376.) If a person is in a perturbed state of mind and his debtor takes advantage of his condition, and employs menace to compel him to cancel the debt, it would be a gross fraud and the debtor could no more plead the relinquishment of the debt as a defense than if he had compelled it by the direct use of physical force. (*Parmentier* v. *Pater,* 13 Or., 121.) Any contract produced by actual intimidation ought to be held void whether it arises as a result from merely personal infirmity or from circumstances which might produce a like effect upon persons of ordinary firmness. (Evans Pothier on Obligations, 1 to 18; Am. & Eng. Ency. of Law, page 68.) To establish the defense of duress it must be shown that the party performed the act under the influence of the threats or violence; it need not be shown that the threats were made directly to the party influenced. (*Feller* v. *Green,* 26 Mich. 70; *Dunham* v. *Griswold,* 100 N. Y. 224; *Snyder* v. *Braden,* 58 Ind. 143; *Taylor* v. *Jaques,* 106 Mass. 291; *Sartwell* v. *Horton,* 28 Vt. 370.) Instruction No. 1, given at the request of plaintiff, does not correctly state the law. In this instruction the jury are told that every presumption was in favor of the note sued upon in this action. Whereas, as a matter of law, every presumption was in favor of the note sued upon; defendant's answer had interposed the defense of duress, of fraud and intimidation and of want of consideration, and had put the burden proving *bona fides* upon the plaintiff. (*Thamling* v. *Duffy,* 14 Mont. 567.)

HUNT, J.—The plaintiff, on the trial, testified that he thought he purchased the note after maturity, that he was the owner of the note, and that it was not paid. The plaintiff then rested, whereupon the defendant moved for a nonsuit upon the ground that it appeared that the witness purchased the note after maturity, and that, therefore, it was not entitled to any protection in his hands as an innocent purchaser; that the answer challenged the consideration for the note, and, no answer having been given to the plea of no consideration, under such circumstances it was necessary for the plaintiff not only to show the note, and that he was the owner of the note, but also that there was a consideration for its execution. The court overruled the motion. The defendant saved his exceptions, and has argued to us that under the decision in *Thamling* v. *Duffey*, 14 Mont. 567, the pleading of the defendant denying the purchase of the note before maturity, and alleging notice of the defenses set up in the answer, was sufficient to require the plaintiff in his case in chief to prove that he purchased the note before maturity, and without notice of such defenses. But we think defendant's construction of the decision of the court in *Thamling* v. *Duffey* is not accurate. A careful reading of the opinion with relation to the pleadings that were before the court in that case will demonstrate that the conclusion of the court did not change the well-established rule of law as laid down by Daniel on Negotiable Instruments, who says (§ 166) :

"But if the defendant show that there was fraud or illegality in the origin of the bill or note, a new coloring is imparted to the transaction. The plaintiff, if he has become innocently the holder of the paper, is not permitted to suffer; but, as the knowledge of the manner in which it came into his hands must rest in his bosom, and the means of showing it must be much easier to him than to the defendant, he is required to give proof that he became possessed of it for a sufficient consideration. If he is innocent, the burden must generally be a light one; and, if guilty, it is but a proper shield to one who would be, but for its protection, his victim."

Section 167 : ''It was formerly considered necessary, in order to enable the defendant to put the plaintiff on proof of consideration, that the defendant should have given the plaintiff notice to prove consideration; but it is well settled now that no such notice is necessary, and it is seldom given. It was also formerly held that, where the consideration given by the plaintiff was disputed, and a notice to that effect had been given, the plaintiff must go into his whole case in the first instance, and could not reserve proof of consideration as an answer to the defendant. But now the plaintiff is only required to give affirmative proof of consideration after the defendant has given evidence tending to rebut the *prima facie* case which the production of the instrument makes out.'' ·

The approved quotation from *Bank* v. *Diefendorf*, 123 N. Y. 191, 25 N. E. 402, in *Thamling* v. *Duffey*, very clearly states the law to the effect that the burden of proving good faith is always upon the party asserting his title as a *bona fide* holder in a case where the *proof* shows that the note has been fraudulently or illegally obtained from its maker, but such a party makes out his title by presumptions until it is impeached by *evidence* showing the paper had a fraudulent inception. When this *evidence* is before the court or jury, then the plaintiff can no longer rely upon the presumption, but must affirmatively show good faith. And so in this case, the plaintiff, by producing the note and furnishing evidence of the fact that he was the holder and owner at the time of the commencement of the suit, made out a *prima facie* case; that is, there was competent evidence tending to prove propositions of fact, which, if not rebutted or controlled by other evidence, stood as sufficient proofs of such propositions of fact.

The defendant then undertook to prove that the note was given under duress, and offered evidence tending to support such averment. Having introduced this evidence, the burden of introducing evidence to prove that he was a *bona fide* holder for value was yet on the plaintiff; that is, his presumptions were overcome, and he had to show good faith by affirmative evidence on rebuttal. The plaintiff might have offered his

evidence of good faith when he first presented and proved his note, or he might have delayed offering it until after the defendant introduced his testimony. That was a matter largely in the discretion of the plaintiff, subject to rules of practice in a court, which has generally the right to control the order of proof, limited always by the statutes and manifest justice of the case. But whatever rule might have been prescribed for the introduction of testimony, the burden of making out good faith always rested upon the plaintiff, whether before or after the testimony of defendant had been introduced tending to show that the note was not in plaintiff's hands as a *bona fide* holder. See, also, *Burnham* v. *Allen*, 1 Gray 496; Greenleaf on Evidence, § 172. This view is also in accord with the decision of the supreme court of the United States in *Commissioners* v. *Clark*, 94 U. S. 278, where it was decided tnat where the question is whether the indorsee and holder had notice of tne prior equities between antecedent parties to the instrument, the holder of such note under such circumstances is not obliged to show that he paid value for the instrument until the other party has proved that the consideration was illegal, or that it was fraudulent in its inception. See *Meadowcraft* v. *Walsh*, 15 Mont. 544; 2 Greenleaf on Evidence, § 172.

We therefore think that the motion for a nonsuit was correctly overruled, and that the court properly denied to the defendant permission to open and close upon the question of duress.

The evidence to sustain the plea of duress showed substantially the following state of affairs : The defendant, Loeber, went to Sheridan, Montana, about October 7, 1891, to receive the concentrates of the Toledo mine in behalf of two of the lessees of the mine. On the next morning, directly after breakfast, about 8 o'clock, some 12 or 15 miners gathered about the person of the defendant, and when he was about to take his team, and leave Sheridan for Dillon, some 40 miles away, some of them informed him that he could not go. One of them, Erick by name, told him that if he did not remain in Sheridan, and settle the matter of the claims of the men right then, he would

shoot him.   Another one, by the name of Storm, told him that if he got on the wagon they would pull him off, and that they had a rope there.   The defendant immediately thereafter was crowded by the men into a room in the hotel, and for about two hours he was held there, and told that he must settle the claims against the mine.   He remonstrated by saying that he did not owe anything.   The crowd then told him that he could sign the notes on the pay roll.   The note in suit was one of several amounts on the pay roll, which was for work that the men had done at the mine.   The defendant testified that two men, named Wier and Spooler, had leased the mine, and had worked the men, and it was the time of these men that was included in this pay roll handed to the defendant.   The defendant denied that he owed any part of the pay roll, and said that he was induced to sign the note simply because he wanted to get away from Sheridan, and out of danger.   He testified that the men used rough language, and said that he could not go away until everything was settled.   Soon after giving the notes, the defendant left; and on October 24th he published in the *Madisonian,* a newspaper published at Virginia City, a notification to the public against purchasing the note involved in this suit and others which the defendant had executed, for the reason that all such notes were obtained through intimidation and coercion and without consideration.   On cross-examination the defendant said that he was not interested in the labor at the mine, that he did not hire the men, that he owned one-fourth interest in the mine, and took the concentrates from the lessees and shipped them because they owed him money, and they wanted him to pay himself out of the concentrates, since they could not pay him.   He further said that the miners wanted some kind of a settlement from him on the day of the trouble, before he attempted to get on the wagon; that he never saw the payee, Schneider, that day; that the men crowded around him and shoved him ahead until he was inside the room; that they stood in the doorway, and when he tried to get out told him that he could not go; that Schneider, the payee of this note, was not there at that time; that the men went over

to the plaintiff's store in Sheridan, and brought the paper upon which the notes were made out; that one man, by the name of Edwards, was the only one who said that he would protect defendant; Edwards told him to sit down, and he would see that nothing happened to him.

Henry Nickel, who was with Loeber, corroborated the testimony of Loeber in its more material parts, and said : That one of the lessees of the mine told the men to go after Loeber, whereupon they said to Loeber, "You have to pay." One of the men told Nickel that he could go, but that Loeber had to stay, and that if Loeber "makes a move for that wagon they will pull him off with a rope;" and that another—one Storm—said that they had shooting irons and a rope, and that, if Loeber did not do something pretty quick, there would be trouble ; that from the way the men talked he thought Loeber would have trouble; that they crowded around Loeber, and wanted the money ; that he (Nickel) told Loeber of the threat to pull him off the wagon, and that Loeber replied, "Anything to get away from here ;" that Loeber was worried, did not know what to do, was nervous, trembling and wanted to get away, and did not feel free. Nickel said to Loeber : "If you move off, there will be trouble, and what are you going to do ? Do you want to stay here a couple of days ? I will stay with you, or, if you don't, you will have to do something." To this Loeber replied "I will sign those notes to get away from here ;" that after the notes were signed, and shortly after noon, the defendant and Nickel left on the stage ; that the wagon which they had had in front of the hotel was not used, and that they did not see Schneider that day.

The testimony on rebuttal was to the effect that about 11 o'clock on the day the notes were signed the payee, Schneider, went to Schultz's house in Sheridan to get his note; that he went over there, and found Loeber, who pointed the note out to him, and said nothing about having been compelled to execute the note or anything of the kind. Schneider also testified that upon that day, about noon, Loeber went to his house, and

told him that he would send him the money due on the note from Dillon the next day, but that the money did not come; that he could not say whether he transferred the note to this plaintiff, Rossiter, before or after it became due; that Loeber told him in June, 1891, that he was interested in the lease, and was going to pay all the men off, and that he (Schneider) never heard of any duress or compulsion brought to bear on Loeber at the time of the execution of the note, and knew nothing of the same. Fred Schultz, the hotel keeper at Sheridan, a witness for plaintiff, said that he did not hear any threats that day made in the office of the hotel; that he was there when the notes were signed; that there were "no threats of any consequence that I know of;" that "there was no imprisonment, or barred doors, or anything of that kind;" that there were may be fifteen persons in the office at the time Loeber gave the notes, which was about 10 o'clock in the morning; that Loeber came into the office on his own accord, and the men came in with him; that Loeber made no complaints about threats or duress to him, and none were made at that time. Witness was asked then whether he thought from the condition of the community that day, and from what he saw and heard, Mr. Loeber was in danger of his life or injury if he did not sign those notes. Against the objection of the defendant the witness was permitted to answer. His reply was: "I don't hardly think that he would have been injured or shot if he had refused to execute those notes. I didn't hear him say anything of that kind." This witness on cross-examination said that he knew some ten or fifteen men were congregated about Loeber there, asking Loeber to execute the notes or give them money, and that he knew Loeber did not go away with the team that was hitched up for him to go away with; that he "expected that these men prevented Loeber from going;" that he noticed nothing peculiar about Loeber's condition of mind at that time; that when the men and Loeber went into the office of the hotel, they did not push Loeber, but "kind of walked in a crowd;" that witness did not pay much attention to the execution of the note. Another rebutting witness,—Waldert,—

who had worked in the Toledo mine, said that he did not go to the hotel until the notes were being signed, but was about, and did not hear any threats of shooting or hanging Loeber upon the day the notes were executed; that Loeber himself proposed to give duebills to the men; that after the notes were executed Loeber made no complaint about the manner of their execution at all, but said that he would have to pay them when they became due, and thereafter Loeber again said that he would pay the notes upon the day they were due; that in a few days witness at Butte asked Loeber for the amount of his note, but Loeber declined to pay until it was due.

The plaintiff, Rossiter, on rebuttal swore that he was in his store at the time the notes were executed, and saw nothing that would induce him to go out, and see what was going on, but understood from rumor that the miners were in town, trying to get their pay; that Loeber never said anything to him with reference to the notes, but that he read in the *Madisonian* the notice of Loeber, and thinks he read it before he got the note, and also thinks he bought the note in December, 1891, after its maturity.

The court granted the defendant's motion for a new trial upon the ground of errors of law in the instructions given, and our decision affirming the ruling of the district court will be based upon the same ground.   But we have stated the testimony for the purpose of explaining the facts constituting the duress relied upon by the defendant, and for the purpose of expressing the opinion that the court would have been well justified in setting aside the verdict of the jury upon the ground that it was unsupported by the evidence.

There is really no substantial conflict in the most material parts of the testimony of the witnesses of the plaintiff and the defendant concerning affairs just prior to the execution of the note in suit.   There is no denial of the testimony of Loeber and Nickel to the effect that Loeber was told that he could not go, but would have to settle, and that in obedience to that threat he was prevented from taking the team which he had hired to carry him to Dillon.   It seems clear from the evidence

that the conduct of the men who gathered about Loeber in the hotel demanding a settlement, and refusing to allow him to go, and from the threats made and communicated by Nickel to Loeber that the men would pull Loeber off of the wagon if he made an effort to leave without settling, constituted a menace of violence, and that Loeber acted upon that menace, and yielded to the restraint and to a reasonable fear of immediate danger to his person. We find no positive denial of the statement of Loeber to the effect that when he tried to go out of the room he was told he could not leave. Nor were the threats alleged to have been made by Erick and Storm denied; nor is it denied that he was actually detained by the men against his will, and told that he must settle before he left Sheridan. On the contrary, one of the plaintiff's witnesses frankly said he "expects these men did prevent Loeber from going." If the statements of Loeber and Nickel were untrue, it occurs to us that it would have been very easy to specifically contradict them by the evidence of some of the men who were present with the crowd before the notes were signed. But, as the record discloses the testimony, we believe it sufficiently appears by the uncontradicted substance of the testimony of the defendant that the will of Loeber was overcome by restraint and the danger of personal injury; and that the reason Loeber executed the notes was his fear of danger and his desire to get away, rather than to liquidate a claim of an amount of money due to the payee of the note. The defense of duress was made out. (*McPherson* v. *Cox*, 86 N. Y. 472; *United States* v. *Huckabee*, 16 Wall. 414.)

If Loeber owed Schneider, or any one else, to whom he gave notes at that time, any money, and refused to pay him, the courts are open for redress, but the law will not suffer any man to surround another by force, restrain him of his liberty, and under threats of violence to his person place him in a state of compulsion or necessity wherein he is influenced to incur a civil liability. Written obligations, whether for a debt due or not, made under such circumstances, will not be enforced at the instance of the person who takes them with notice of the

circumstances connected with their inception, as plaintiff in this case clearly did, if the maker plead and prove such duress as a valid defense.

Duress having been proved on the trial, the question of no consideration is immaterial to the further discussion of the case. Accordingly it was error in the district court to instruct that it was incumbent upon the defendant to establish his defense of duress and compulsion *and* want of consideration by a preponderance of the evidence, and, if he failed to do so, plaintiff should recover. He was not bound to prove both such defenses; either, if established, would defeat a recovery by plaintiff.

What we have heretofore laid down, namely, that the burden of proving that plaintiff was a holder in good faith was always upon him, relieved defendant of establishing the defense of duress by a preponderance of evidence. It was always upon plaintiff alone, who acquired this note subject to the defenses which might be interposed by defendant against its payment, to prove his *bona fides* to entitle him to recover.

By instruction No. 5, the jury, among other things, were charged that, unless they found that the threats were of such a character as to be likely to terrify a man of defendant's firmness, then the note sued upon was a valid obligation, etc. The question in the case under the testimony was whether this defendant, presumably of ordinary firmness, was actually threatened with violence or restraint, or was restrained, and was actually and reasonably in fear of personal injury or confinement, and acted in executing the note under the influence of such threats and fears. If this question was affirmatively answered, plaintiff could not recover, and, if defendant's testimony was true, and he was terrified, and acted under compulsion, whether the threats of violence were of such a character as to be likely to terrify a man of his assumed firmness became immaterial.

If the case is tried again, defendant should amend that portion of his answer which pleads : "That as to whether * * * the payee named in the said note transferred the same by indorsement, * * * or whether plaintiff is or ever

has been the owner or holder of said note defendant has no knowledge or information sufficient to form a belief, and therefore denies the same.'' Such a denial is bad. (*State ex rel. Milstead* v. *Butte City Water Co.*, *ante*, 199.)

The learned judge who tried the case properly granted a new trial. We think he was justified in doing so, not only upon the ground of errors of law, but, as indicated, we think he ought to have done so on the whole evidence in the case. The order granting a new trial is affirmed.

*Affirmed.*

De Witt, J., concurs. Pemberton, C. J., not sitting.

