## E. O. BROWN v. J. A. PINKERTON.[1]

June 9, 1905.[2]

Nos. 14,345—(88).

**Guardian's Sale.**

Section 204, c. 46, Probate Code 1889 (section 4611, G. S. 1894), limiting the time to five years for the heir or person claiming under him to bring suit to set aside a guardian's sale, *held* retrospective, and to apply to all such sales before that date.

**Statute of Limitations.**

The statute of limitations referred to is one of repose, and not of evidence, which protects the purchaser or person claiming under him at the guardian's sale where five years have elapsed since the guardianship terminated and the sale was made.

**Construction of Statute.**

To give effective force to the operative word "sale," in the statute, it is sufficient if there was a license of the probate court, a sale evidenced by

---

[1] E. O. BROWN v. J. A. PINKERTON and Another.

June 9, 1905.

Nos. 14,346—(89).

Appeal by defendant J. A. Pinkerton from an order of the district court for Lac qui Parle county, Powers, J., denying a motion for a new trial, after a trial and findings in favor of plaintiff. Reversed.

*H. L. Hayden, C. A. Fosnes* and *C. M. Greene*, for appellant.

*Sorkness & Palmer* and *Wellington Brown*, for respondent.

PER CURIAM.

This was an action for partition, wherein the plaintiff claims to be the owner of an interest in the northwest quarter of section 24, township 117, range 45, Lac qui Parle county. The defendant Pinkerton holds through mesne conveyances resting upon a guardian's sale. The Bank of Dawson has a mortgage upon plaintiff's interest. Defendant claims protection under the statute of limitations (section 204, c. 46, of the Probate Code of 1889; section 4611, G. S. 1894), which we have upheld, as applied to this sale, in the case to determine adverse claims, which was tried and considered at the same time as this one, and involves the same questions, which decision rules this case.

It is therefore directed that the order of the trial court denying a new trial be reversed, and the cause remanded for further proceedings.

[2] Reported in 103 N. W. 897, 900.

confirmation of that forum, and a conveyance resting thereon, although irregular in form.

**Guardian's Deed.**

Where it appears that such conveyance was made by the guardian, and is in fact, though informal in its recitals, an attempt to give effect to the probate proceedings, it is a sufficient deed, as such, to put the limitation statute into operation.

Action in the district court for Lac qui Parle county to annul a deed of land made by the guardian of plaintiff during the latter's minority and to determine the adverse claims of defendant thereunder. The case was tried before Powers, J., who made findings of fact, and as conclusions of law found that the deed was void, that the order of the probate court confirming the guardian's sale was unauthorized, that the statute of limitations (G. S. 1894, § 4611) did not apply to the present case, and that plaintiff was the owner of the land in question subject to an outstanding life estate held by defendant. From an order denying a motion for a new trial, defendant appealed. Reversed and new trial ordered.

*H. L. Hayden, C. A. Fosnes* and *C. M. Greene,* for appellant.
*Sorkness & Palmer* and *Wellington Brown,* for respondent.

LOVELY, J.

This is the statutory action to determine adverse claims to a quarter section of land in Lac qui Parle county. The cause was tried to the court, who made findings of fact, and held that plaintiff was the owner of a designated interest in the property; that defendant acquired no interest or right in the same under a guardian's deed which was the real subject of the controversy in the suit. There was a motion for a new trial, which was denied, and from this order defendant appeals.

The following facts are of record, not open to dispute, and in accord with the findings of the trial court: In 1886 Andrew Gilberg died intestate, owning the tract which is the subject of the litigation. He left, him surviving, a widow and one son, John F. Gilberg. Manford Horn was appointed administrator of the estate, and also guardian of the son, who was then fourteen years of age. On March 2, 1889, the guardian filed a petition in the probate court of Lac qui Parle

county, asking leave to sell his ward's interest in the real property referred to, upon the stated ground that it would benefit the ward, in that he would have the interest, and to provide for an outstanding mortgage thereon then due. This application was considered by the probate court, who, on May 14 following, by order authorized the guardian to sell at private sale the quarter section referred to, provided, before making the sale, the land should be appraised by three persons, who were appointed to estimate the value of the same, who should first take and subscribe an oath honestly to appraise the property at a fair cash valuation, and that it should not be sold for less than its estimated value, or until after the terms of the sale should have been published four weeks in a designated newspaper; also that such sale should not be made until a bond had been executed by the guardian to the judge of probate in the sum of $1,500, conditioned that such guardian account for the proceeds of the sale. On June 14 following, the guardian reported to the court that he had caused the estate in question to be appraised, that the required bond had been given, that he had taken the oath provided for, that the proper notice was published, and that he offered and sold the land in question upon the terms provided in the notice, as directed by the court, viz., for $1,600, to be paid as follows: Four hundred bushels No. 1 wheat in the fall of 1889, and six hundred bushels each succeeding year until fully paid, at market price, with interest at eight per cent. per annum. Also that the guardian was not interested in the sale. Thereupon the same day an entry was made by the judge of probate finding that all the requirements in the order of sale had been complied with, and that the property had been sold to one Emil Jacobson for its appraised value. The sale was thereupon in terms confirmed, and the guardian, in form, duly authorized to make a deed therefor to the purchaser.

In December, 1889, John F. Gilberg removed to Sioux Falls, South Dakota, where he has ever since resided. He became twenty-one years of age March 12, 1894, when the guardianship necessarily terminated. After the first payment by sale of wheat was made by Jacobson, there was a new oral agreement, by the terms of which Horn, the guardian, was to convey the lands, and Jacobson was to execute a mortgage thereon for a loan, and thereby raise money to pay for

the same. Thereafter, on November 26, 1890, the guardian executed' a warranty deed purporting to convey to Daniel Emil Jacobson (the same person who purchased the land), for $2,400, the property in question. This deed was in the usual form, contained full covenants of warranty, but made no reference to the probate proceedings as source of title or right to sell or convey the premises, except that in the body of the deed Manford Horn was designated as "guardian of John F. Gilberg," and the conveyance was signed, "Manford Horn, Guardian." This deed was delivered about the time it was executed, and was recorded December 16, 1890. In the course of time through mesne conveyances the quarter section attempted to be deeded to Emil Jacobson, whose real name was Daniel Emil Jacobson, passed to the defendant in this case, who purchased the same for full value, with no other notice of defects in the title than such as appeared of record in the probate court and the office of the register of deeds of Lac qui Parle county. There was a settlement between the ward and' his guardian on January 21, 1899, which was approved by the probate court. In such settlement the ward received from the guardian a certain specified sum in full satisfaction of all claims and money due him from the guardian, for which he executed his release, whereupon Horn was discharged by the probate court from all liabilities of the guardianship trust. It would seem as if the ward took no further interest in the property until after he transferred his title, on July 27, 1903, to the plaintiff in this suit, for the inconsiderable sum of $25.

It appears from an examination of the records in this suit that, while the guardian was licensed to sell the property of the ward and the court confirmed the sale, and a deed, though informal, was made thereof, yet there were serious irregularities. There was in fact no notice thereof published; no bond was given till a year after the sale; the land was not offered at the time it was directed to be sold; the sale to Jacobson was upon an oral agreement, rather than based upon a published notice; and the deed finally executed, though resting upon an order to sell by the court, was informal, and did not recite the probate proceedings upon which it was predicated. It must therefore be conceded that these defects in the procedure to dispose of the property by the guardian were of such substantial character that the sale would have been avoided if the defects had been questioned in time.

Certain conditions restricting collateral inquiry into the sale of real estate by guardians have existed in our statutes ever since, and prob- ably before, the revision of 1866. They are prescribed in terms in section 4612, G. S. 1894. This is a statute to protect such transfers, without any limitation upon lapse of time, but takes immediate effect upon the sale itself. It provides that such sales shall not be avoided when it appears there was a license, an approved bond, the oath pre- scribed taken, the premises sold, the sale confirmed, and the property held by a purchaser in good faith, several of which conditions were wanting here. If there were no other law, we would be required to sustain the learned trial court in the conclusion reached that the title of the present owner, though based upon the payment of a full con- sideration, would on this collateral attack have to be set aside in fa- vor of the purchaser who paid a mere pittance for the property. But the deed to Jacobson was made in 1890. The purchaser and his sub- sequent grantees entered into possession immediately upon the actual sale, and have continued to enjoy the same for more than thirteen years. The last purchaser, about two years ago having paid a very substantial and adequate price for the property, now invokes the pro- tection of section 204, c. 46, of the Probate Code of 1889, to be found in section 4611, G. S. 1894, which reads as follows:

> No action for the recovery of any real estate sold by an ex- ecutor or administrator, under this chapter, shall be maintained by any heir or other person claiming under the deceased, unless it is commenced within five years next after the sale; and no action for any estate so sold by a guardian shall be maintain- ed by the ward, or by any person claiming under him, unless commenced within five years next after the termination of the guardianship; except that minors and others under legal disability to sue at the time when the right of action first ac- crues may commence such action at any time within five years after the removal of such disability.

Preliminary to the attempted application of this act, it is urged that the guardian's sale was made before October 1, 1889, when the Pro- bate Code from which we have quoted went into effect, and while section 50, c. 57, G. S. 1878, was in force. Section 4611, supra (from

the Probate Code), will be found, upon reference, to exclude from its. terms the words "persons out of the state," as well as the survival of the right of the heir to attack the sale five years after his return to the state; the reference to "persons out of the state" and "return to the state" constituting the only difference between section 50, supra,. and the provision of the Probate Code referred to. The Probate Code of 1889, so called, as is well known, attempted a codification of all the laws embraced in the subject of probate jurisdiction; and there was an express repeal of section 50, c. 57, G. S. 1878, and a re-enact- ment of the provision from which we have quoted, wherein the words. "persons out of the state" and "return to the state" are omitted. In all other respects the statutory provisions are identical, and we need not stop to construe the effects of this legislation, further than to say that it is a recognized canon of statutory construction that where there is an express repeal of an existing statute, and a re-enactment of it at the same time, as here, or a repeal or re-enactment of a portion of it,. the re-enactment neutralizes, so far as it goes, the repeal, and the por- tion continued entitled such part to be regarded as the law during the entire period of both statutes. Sutherland, Stat. Const. (1st Ed.) § 134.

There was a period of time after the sale, however, when the heir was a resident of this state, while his right of action existed, when he might have commenced suit; and there is much force in the view that even if the limitations of the statute of 1878 would by its terms. control his rights, because in force at the time of the sale, which we do not say, it did not go so far as to confer on him a privilege to leave the state, and thereby toll the limitation period indefinitely or until his return, which would be a favor not possessed or enjoyed by citizens. But as intimated, we need not give this consideration much force, since the act of 1889 (Probate Code) is unquestionably and distinctly a statute of limitation, and affects the remedy solely;. hence it follows, under the rule we have already adopted, that it is. to be applied retrospectively. Stine v. Bennett, 13 Minn. 138 (153) ; State v. Messenger, 27 Minn. 119, 6 N. W. 457; Hill v. Townley, 45 Minn. 167, 47 N. W. 653. Therefore this statute, as it was adopted in 1889, became and continued to be of force and vital efficacy and of potent application to a sale on which more than five years had run.

under this statute, when the attempt should be made to divest the purchaser of his title by legal proceedings in the name of the heir, and in such case it must be held to be operative if its terms refer to the sale here questioned; and we are not able to see any good reason why it does not embrace such transaction within its purview.

"Sale" is the effective, crucial, and vital word of the statute. Necessarily there must have been a sale—not a valid or legal sale, for these need no protection, neither can it mean a sale lawfully ordered, but an irregular or void sale, by reason of the fact that the statutes which direct and authorize it have not been complied with. It is true that there must be something to give colorable grounds on which the limitation can be enforced, and we think and hold that these are to be found in the license of the probate court, and in this case a confirmation by that authority, followed by a conveyance executed by the grantor as guardian. Both the judge of probate and the guardian must be presumed to have supposed that they had legal authority for their actions, and we are of the opinion that nothing more is required, to entitle the purchaser and those claiming under him to the benefits of the limitation provided for, than the existence of the license by a court having jurisdiction of the subject-matter (estates of decedents), a judicial consideration by the court of the matter, and a determination that the grounds for the sale existed, and the attempt, as here made, to effectuate the direction of the court by a conveyance, although informal, yet resting upon the authority thus derived.

Statutes of limitations are statutes of repose, not rules of evidence, and, as said by Justice Cooley in Toll v. Wright, 37 Mich. 93—a case in principle very like the one now considered—we should seek, in construing them, to give the operation intended, for we must not defeat their purpose by a strictness of construction it was never designed they should receive. Let it be conceded that the guardian's sale in this case was void. The fact remains that the court assumed to order it ostensibly, though mistakenly, under the provisions of law. There was a finding that the guardian had done his duty. There was a sale, though in fact without legal notice, and, following, a confirmation, as well as a conveyance; and these, in our judgment, were sufficient to put the statute invoked in behalf of defendant in operation. This conclusion is supported by the decisions of our

own and other courts. Jones v. Billstine, 28 Wis. 221; Toll v. Wright, supra; Spencer v. Sheehan, 19 Minn. 292 (338); White v. Iselin, 26 Minn. 487, 5 N. W. 359; Dawson v. Helmes, 30 Minn. 107, 14 N. W. 462; Smith v. Swenson, 37 Minn. 1, 32 N. W. 784; Burrell v. Chicago, M. & St. P. Ry. Co., 43 Minn. 363, 45 N. W. 849; Rice v. Dickerman, 47 Minn. 527, 50 N. W. 80.

The agreement to pay for the land in the sale of wheat did not constitute a transfer and exchange of property. The purchase price was fixed, and the payments were to be made in money, though to be derived from the sale of a certain number of bushels of a merchantable commodity; and the results, in money, were to be turned over in stated payments. This constituted a sale, rather than a barter. While the conveyance was not formal, since it did not recite the source of authority upon which it was based, yet, for the purpose of giving effect to the limitation statute the license or order of sale, the confirmation, and the reference to the guardian in the deed actually executed, permit no other inference than that such deed was made under a supposed warrant of authority, upon which the guardian acted.

It was undoubtedly the purpose of the legislature, when time has elapsed and property has greatly enhanced in value in the hands of innocent purchasers, to prohibit, in the interests of justice, the efforts and thrifty endeavors of "prowling assignees." For that purpose the limitation statute was enacted, and it is our duty to give it effective force when occasion arises.

Our examination of the findings of fact and law in this case indicates that the many irregularities in the probate sale were, in the judgment of the learned trial court, sufficient to avoid it. We have therefore reached the conclusion that the order appealed from must be reversed, and the cause remanded for further proceedings in conformity with the views above expressed.

Order reversed and new trial granted.