CHARLIE CHRISTENSON, Respondent, v. MRS. MARGRIET GRANDY, Formerly Mrs. Margriet Myrdal, Ragnhildur Myrdal, Johann Vilhjalmur Myrdal, Einar Myrdal, et al., Appellants.

(180 N. W. 18.)

**Guardian and ward — guardianship held to terminate within Statute of Limitations when minor attains majority — Statute of Limitations held to apply to suit to recover land conveyed by guardian.**

Section 8923, Comp. Laws 1913, which provides: "No action for the recovery of any estate sold by a guardian can be maintained by the ward or any person claiming under him, unless it is commenced within three years next after the termination of the guardianship, or when a legal disability to sue exists by reason of minority or otherwise at the time when the cause of action accrues within three years next after the removal thereof,"—construed, and *held:*

(1) That, within the purview of said statutes, the guardianship is terminated when the minor attains his majority.

(2) That in the instant case, wherein it appears that a guardian was duly appointed; that such guardian presented a petition setting forth certain alleged reasons why certain land belonging to the minor wards should be sold; that the county court made a decree upon such petition, awarding the land to the guardian to enable her to make conveyance to the purchaser, and required the guardian to furnish an additional bond in an amount exceeding the appraised value of the land; and that such guardian thereafter sold and conveyed the land to a purchaser, who paid the purchase price and commenced to exercise

full and complete control over the premises as owner,—the limitation prescribed in such statute is applicable.

Opinion filed October 20, 1920. Rehearing denied November 9, 1920.

From a judgment of the District Court of Cavalier County, *Kneeshaw,* J., defendants Ragnhildur Myrdal and Johann Vilhjalmur Myrdal appeal.

Affirmed.

*E. E. Fletcher* and *McIntyre & Burtness,* for appellants.

The heirs of the entryman do not take by descent, but by purchase, and with the same force and effect as though their names were written in the patent. Hutchinson v. Caldwell, 153 U. S. 65, 38 L. ed. 356; Witenbrock v. Wheadon (Cal.) 60 Pac. 664.

Each one of the parties would receive an undivided one-fourth interest in the land under the patent. Ibid.

Under the ten-year statute that tacking of possession is not permissible. Streeter v. Frederickson, 11 N. D. 300; Wright v. Jones, 23 N. D. 191.

"Occasional cutting and removal of hay from unoccupied lands under a permit from one claiming title adverse to the plaintiff's grantor is not sufficient to constitute adverse possession so as to avoid plaintiff's deed." Page v. Smith, 33 N. D. 369; Johnson Land Co. v. Mitchell, 29 N. D. 528; State Finance Co. v. Beck, 15 N. D. 374.

The statute does not begin to run until the guardianship has been legally ended, which requires an order of the court having judisdiction of the guardianship, discharging the guardian. Gronna v. Goldammer, 26 N. D. 121; United States F. G. Co. v. Bank, 36 N. D. 16.

*G. Grimson (Bangs, Hamilton, & Bangs,* of counsel), for respondents.

"The guardianship terminates in all events at the arrival of the ward at majority, except for purposes of a final accounting and settlement with the ward." 21 Cyc. 50. See cases cited. Re Algier, 3 Pac. 849; Ganahl v. Sohr, 8 Pac. 650. Comp. Laws 1913, § 8880; being Comp. Laws 1887, § 6038.

CHRISTIANSON, Ch. J. This is an action to determine adverse claims to a quarter section of land in Cavalier county. The trial court ren-

dered judgment in favor of the plaintiff, and the defendants Ragnhildur Myrdal, Johann Vilhjalmur Myrdal, and Einer Myrdal have appealed and demanded a trial. *de novo* in this court.

The complaint is in the usual form, and sets forth that the plaintiff has an estate in fee simple in the premises in controversy and is in possession thereof; and that the defendants claim certain estates or interests in or liens or encumbrances on said property adverse to plaintiff. The prayer for judgment is: That the defendants be required to set forth their claims and that such claims be adjudged null and void; that title be quieted in the plaintiff as to all claims of the defendants; and that the defendants be forever debarred and enjoined from asserting the same. Ragnhildur Myrdal, Johann Vilhjalmur Myrdal, and Einer Myrdal, in their answer, aver that they are the owners of a three-fourths fee simple estate in the land by reason of (their) being the heirs of one Einar E. Myrdal; and by virtue of the patent for said premises issued by the United States government to "the heirs of Einar E. Myrdal, deceased," on December 21, 1891. To this answer plaintiff interposed a reply, wherein he averred that, in proceedings had in the county court of Cavalier county, the said defendant Margriet Myrdal was on August 26, 1891, duly appointed guardian of the said above-named three appellants; and that subsequently it was ordered by the county court of Cavalier county in said proceeding that the land in controversy be awarded to the said Margriet Myrdal, with privilege to sell the same at public or private sale; that said final decree so adjudging was entered on March 7, 1892; that the said Margriet Myrdal did on March 30, 1892, in pursuance of said order, convey said premises to one Frank W. Wilder by warranty deed, which was duly recorded in the office of the register of deeds of Cavalier county, North Dakota, on April 12, 1892; that said Wilder paid to the said Margriet Myrdal the sum of $710 for her share and for the shares of said three appellants in and to said land; that the said land was subsequently sold and conveyed to various parties by instruments of conveyances duly recorded; that the plaintiff purchased the same on December 11, 1914, from the then record owner thereof; that since the purchase by said Wilder on March 30, 1892, said Wilder, and those holding under him or them, have been in possession of said premises and have paid all taxes assessed against the premises. The said reply further averred,

among other things, that the said defendants are barred by various statutes of limitation, including § 8923, Comp. Laws 1913, from maintaining an action for the recovery of said land; and that appellants have been guilty of laches in asserting their alleged rights to said land, and hence are estopped from now asserting such rights.

The material facts are undisputed, and may be summarized as follows: In May, 1890, one Einar E. Myrdal and his wife and children moved on the premises in controversy. Myrdal had entered such premises under the United States pre-emption laws. On April 12, 1891, Einar E. Myrdal died, leaving surviving him as his heirs at law his widow, Margriet (now Margriet Grandy), and his three children, the appellants in this case. Shortly after the death of her husband, Mrs. Myrdal and the children moved to the vicinity of Gardar in Pembina county, some 12 or 15 miles distant from the land in controversy, at which latter place her deceased husband owned a 40-acre tract of land. Judging from her testimony she had little or no faith in the land in controversy. It seems that she had virtually made up her mind to abandon it, and it is very doubtful if she ever would have made final proof thereon if it had not been for Bjorn Bjornson, who apparently had some claim against the deceased, Einar E. Myrdal; and, through his solicitation and assistance, Mrs. Myrdal was induced to make final proof thereon. Bjornson took the matter up with one Blichfelt, who at that time was engaged in the real estate business at Langdon, and induced him (Blichfelt) to advance the necessary moneys to pay the government the purchase price and the costs and expenses incident to the final proof. It also appears that these parties, after the final proof had been made, induced Mrs. Myrdal to make application to the county court to be appointed guardian of the three minor children. She was so appointed guardian by order of the county court on August 21, 1891. On December 21, 1891, patent was issued by the United States government, conveying the land to the "heirs of Einar E. Myrdal, deceased." The petition for the appointment of a guardian was entitled, "In the Matter of the Estate of Einar E. Myrdal, Deceased." The petition, among other things, averred that said minors were residents of Cavalier county, and "that they have no father living, or other legal guardian residing in the state of North Dakota; that said minors have real estate to the value of about $500" situated in the county of Cavalier. The

order for appointment of guardian was entitled, "In the Matter of Appointing a Guardian for Ragnhildur, Johann, Wilhelm, and Einar Myrdal, Minors." The order required Margriet Myrdal to give a bond in the sum of $1,000. After such bond had been given and approved by the county court, letters of guardianship (entitled as the order) were issued to said Margriet Myrdal. Thereafter an order was made appointing appraisers. Such order was entitled, "In the Matter of the Appraisement of the Estate of Ragnhildur, Johann, Wilhelm, and Einar Mrydal, Minors," The order recited that it is made "on the application of the guardian of the said minor children of Einar E. Myrdal, deceased," and ordered that three named persons be appointed "to estimate and appraise all the estate of the decedent, except such as is by law exempt from appraisement." Warrant to appraisers was issued accordingly. The inventory returned and filed by the appraisers recites that it is "a true and correct inventory of all the real estate and all the goods, chattels, rights, and estate of Einar E. Myrdal, deceased, which have come to the possession or to the knowledge of the undersigned guardian and the appraisers of said estate." (The only property mentioned in the inventory is the real estate in controversy, which is appraised at $500. It is stated that there is no money, or personal property.) The inventory is verified by Margriet Myrdal. The verification attached thereto recites: "Margriet Myrdal, by appointment of said county court, guardian of the estate of said Einar E. Myrdal, deceased, being duly sworn, etc." Thereafter Margriet Myrdal filed a petition in the county court, wherein she averred, among other things:

"That your petitioner has been duly appointed guardian of the minor children and estate of the late Einar E. Myrdal, and that letters of guardianship have been issued by this honorable Court to your petitioner on the 27th day of August, 1891, as will appear, reference being had to the record in this cause; . . .

"That said deceased left nothing but one real property valued at about five hundred dollars ($500) which is now in the possession of your petitioner;

"That your petitioner and Ragnhildur, Johann, Wilhelm, and Einar Myrdal, minors, of whom the petitioner is guardian, are the only heirs entitled to the estate of said deceased;

"That the property so left by said deceased consists of the following

described land, to wit: The southeast quarter (S.E.¼) of section thirty-two (Sec. 32) in township one hundred and fifty-nine (159) and range fifty-eight (58);

"That your petitioner has no experience whatever as to farming, and that the land above mentioned can be of no benefit and profit to the heirs, said petitioner being unable to work it herself or to see to its proper management, so as to be of some benefit to the heirs;

"That your petitioner verily believes that the most proper and useful course to follow would be that a final decree be issued giving the above-mentioned property to your petitioner, with privilege to sell the same at public or private sale, or by said petitioner giving a good and proper bond as security in case of sale of said property, for the shares of the above-named minor children.

"Wherefore, your petitioner prays:

"That your petitioner and the minors above mentioned be declared the sole and only heirs of the estate and of said Einar E. Myrdal, deceased;

"That for the greatest advantage and benefit of said heirs the land above mentioned be sold either at private or public sale or by said guardian giving good security for the shares of her wards in the said property;

"That for the purpose of enabling said petitioner to give a clear title to the buyer of said property, the final decree to be issued by this court be issued to Margriet Myrdal in her own name."

The county court made the following indorsement on the petition: "The above petition is hereby granted, and a final decree as prayed for is ordered to be issued to Margriet Myrdal, the above-named petitioner, according to the tenor of said petition," Margriet Myrdal executed an additional guardian's bond in the sum of $700. The bond was signed by two sureties, and approved by the county court. On the same day, to wit, March 7, 1892, a final decree was entered, whereby it was "ordered, adjudged, and decreed . . . that all and singular the above-described real property be and the same is hereby assigned to and vested in the said Margriet Myrdal, forever, in the following proportions, to wit: The whole of said property, to wit, the S.E.¼ section 32, township 159, range 58, in the county of Cavalier, state of North Dakota." Thereafter, on March 30, 1892, Margriet Myrdal conveyed

the premises to said Frank W. Wilder, by warranty deed. Such deed was duly recorded in the office of the register of deeds of said Cavalier county on April 12, 1892. Wilder and his successors have exercised full control over the premises since that time, and no claim has been asserted thereto by any of the defendants until they interposed their answers in this action. The youngest of the Myrdal children became twenty-one years old on April 9, 1912. This action was commenced June 27, 1916.

The only question which we find is necessary to consider is whether the action is barred by § 8923, Comp. Laws 1913, which reads: "No action for the recovery of any estate sold by a guardian can be maintained by the ward of any person claiming under him, unless it is commenced within three years next after the termination of the guardianship or when a legal disability to sue exists by reason of minority or otherwise at the time when the cause of action accrues within three years next after the removal thereof."

Appellants contend that they are not barred by § 8923, Comp. Laws 1913, for the following reasons:

(1) That the guardianship of the appellants has not been terminated.

(2) That the statute does not apply because the jurisdictional requirements relating to sales by a guardian were not complied with, and that hence the sale to Wilder was void.

We will consider these contentions in the order stated.

(1) Appellants contend that the guardianship is not terminated, within the meaning of § 8923, supra, until an order is made discharging the guardian. In the support of this contention they cite Gronna v. Goldammer, 26 N. D. 122, 143 N. W. 394, Ann. Cas. 1916A, 165, and United States Fidelity & G. Co. v. Citizens' State Bank, 36 N. D. 16, L.R.A.1918E, 326, 161 N. W. 562. The cases cited were not actions to recover property sold by a guardian. They were actions upon a guardian's bond, and involved the construction of a different statute from that before us. The Statute of Limitations involved and sought to be invoked in those cases was § 8922, Comp. Laws 1913, which reads: "No action can be maintained against sureties, or any bond given by a guardian, unless commenced within three years from the discharge or removal of the guardian; but if at the time of such discharge the person entitled to bring such action is under legal disability

to sue, the action may be commenced at any time within three years after such disability is removed."

While these sections follow each other, and both relate to the limitation of actions, it will be noted that they are couched in quite different language, and relate to wholly different matters. Section 8922 relates to actions on a guardian's bond. That section makes the *"discharge or removal"* of the guardian the event which puts the Statute of Limitations embodied in that section into operation. Section 8923 relates to actions to set aside sales made, and recover property sold, by a guardian. That section designates *"the termination of the guardianship"* as the point of time at which the Statute of Limitations embodied in that section commences to run.

If the legislature intended to say the same thing in each of these statutes, why did it use such widely different language to say it? The reasoning, and in fact the very language, employed by this court in Gronna v. Goldammer, supra, distinguishes that decision and the decision in United States Fidelity & G. Co. v. Citizen's State Bank, from the case at bar, and shows the marked distinction between the two statutes. In the Goldammer decision this court said: "The primary meaning of the word 'discharge' certainly embraces the affirmative action of someone. The statute does not say, 'From the expiration or lapse of the guardianship,' but uses the words, 'from the discharge or removal of the guardian.' It would certainly seem that affirmative action on the part of the court was anticipated. Another reason for holding to this conclusion is that under the authorities, and probably under §§ 8167 and 8271, Rev. Codes 1905 (Comp. Laws 1913, §§ 8805, 8909), no action can be maintained against the sureties prior to an adjudication by the probate court finding a liability."

Our statutes expressly recognize that a guardianship may be terminated otherwise than by the discharge of the guardian. Thus, § 8920, Comp. Laws 1913, provides: "The marriage of a minor ward *terminates* the guardianship." See also Comp. Laws 1913, § 4470. And § 4471, Comp. Laws 1913, provides that if the appointment was made solely because of the ward's minority, the power of a guardian appointed by a court is superseded by the ward's attaining his majority.

While, of course, the guardian may, even after the ward attains majority, still have in his possession property belonging to the ward,

and be under obligation to deliver the same, as well as to account for funds and property received during the course of his administration, there can be no question but that the control of the guardian ceases when the ward arrives at majority. When the ward reaches majority he stands, so far as his legal rights and obligations are concerned, the same as any other person of similar age. He may make contracts, sue and be sued. He is no longer under guardianship. That is terminated. See 21 Cyc. 50; 12 R. C. L. p. 1117; Brown v. Pinkerton, 95 Minn. 153, 111 Am. St. Rep. 448, 103 N. W. 898, 900; Re Allgier, 65 Cal. 228, 3 Pac. 849.

(2) But the appellants say that § 8923, supra, is not applicable, for the reason that in this case there was in fact no sale made by the guardian as such; that the deed given to Wilder was a general warranty deed executed by Margriet Myrdal individually, and not in her representative capacity; that the proceedings which preceded the sale to Wilder were not in conformity with the statutes relative to the sales by guardian; and that such proceedings and sale were wholly void for want of jurisdiction.

It is difficult to lay down precise rules upon the subject of jurisdiction, by which every case can be clearly and certainly determined.

Chief Justice Shaw said: "To have jurisdiction is to have power to inquire into the facts and apply the law." Hopkins v. Com. 3 Met. 460. Chief Justice Green of New Jersey defined jurisdiction as simply judicial power,—"any power possessed by the tribunal, either affirmative or negative." Perrine v. Farr, 22 N. J. L. 356. See also Van Fleet, Collateral Attack, § 58.

Ruling Case Law (7 R. C. L. p. 1029) says: "The word 'jurisdiction' (jus dicere) is a term of large and comprehensive import, and embraces every kind of judicial action, and hence every movement by a court is necessarily the exercise of jurisdiction. In the sense, however, in which the term ordinarily is used, jurisdiction may be concisely stated to be the right to adjudicate concerning the subject-matter in a given case."

The most approved definition of the term "jurisdiction" is that it is "the power to hear and determine." 4 Words and Phrases p. 3877. However stated, the term implies the power of the court to exercise some judgment, and make some determination.

A court has *jurisdiction of the cause* when the laws of the sovereignty in which the tribunal exists grants it power over the subject-matter and to adjudge concerning the general question involved. Bouvier's Law Dict.; Hunt v. Hunt, 72 N. Y. 217, 38 Am. Rep. 129. Jurisdiction of the person is obtained by the personal service of process on him within the territorial jurisdiction of the court, or by his voluntary appearance. Cooper v. Reynolds, 10 Wall. 308, 19 L. ed. 931; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565. When a court has jurisdiction of a cause and of the parties, it does not lose jurisdiction because it makes a mistake in determining either the facts or the law or both. Jurisdiction does not depend upon the correctness of the decision made. People ex rel. Raymond v. Talmadge, 194 Ill. 67, 61 N. E. 1050; Sherer v. Superior Ct. 96 Cal. 653, 31 Pac. 565. The United States Supreme Court has said that the jurisdiction of the court can never depend upon its decision upon the merits of the case brought before it, but upon its right to hear and decide it at all (Ex parte Watkins, 7 Pet. 568, 572, 8 L. ed. 786, 788); that "jurisdiction is authority to decide the case either way." The Fair v. Kohler Die & Specialty Co. 228 U. S. 22, 25, 57 L. ed. 716, 717, 33 Sup. Ct. Rep. 410. Other courts have said: "Jurisdiction is the power to hear and determine a cause, and carries with it the power to decide a cause within the jurisdiction of the court incorrectly as well as correctly, and it does not relate to the rights of the parties, but to the power of the court." Dahlgren v. Superior Ct. 8 Cal. App. 622, 97 Pac. 681. "The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry; not whether its conclusion in the course of it was right or wrong." Lake County v. Platt, 25 C. C. A. 87, 49 U. S. App. 216, 79 Fed. 567. "Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the abstract question. Nor is this jurisdiction limited to making the correct decisions. It empowers the court to determine every issue within the scope of its authority, according to its own view of the law and the evidence, whether its decision is right or wrong." Foltz v. St. Louis & S. F. R. Co. 8 C. C. A. 635, 19 U. S. App. 576, 60 Fed. 316.

In Doran v. Kennedy, 122 Minn. 1, 141 N. W. 851, the plaintiff brought an action to quiet title to a tract of land which had been sold by an administrator. She contended that the probate court had no jurisdiction to appoint the administrator, and that it had no jurisdiction to order a sale of the land. The latter contention was based upon the proposition that the debts, for the payment of which the land was ordered sold, were contracted prior to the issuing of patent, and hence the land could not become liable for the satisfaction thereof, under § 2296, U. S. Rev. Stat. Comp. Stat. § 4551, 8 Fed. Stat. Anno. 2d ed. p. 575. The Minnesota court overruled both contentions. The holding of the court is summarized in ¶¶ 1 and 2 of the syllabus, which read:

"1. The issuance of letters of administration by the probate court of the county where a deceased person resided in his lifetime is conclusive in a collateral action of the regularity of the proceedings resulting in their issuance, unless want of jurisdiction appears affirmatively on the face of the record.

"2. The probate court has jurisdiction over such land. It may rightfully order it sold to pay certain demands. A sale of such land cannot be attacked in a collateral action to quiet title, and on the ground that the probate court improperly ordered it sold. . . ."

In the opinion in the case the court said: "Whether there were facts to warrant a sale in any given case was question which the probate court was obliged to determine, and which that court, and no other, had jurisdiction to determine." The case was brought before the United States Supreme Court by writ of error. In affirming the decision of the court below the Federal Supreme Court quoted with approval the above quoted language from the Minnesota decision, and held that "the jurisdiction of a state probate court to order the land patented to a deceased homestead entryman who had made final proof before his death, to be sold for the payment of his debts, cannot be attacked collaterally because of the provision of U. S. Rev. Stat. § 2296, that no land acquired under the homestead laws shall, in any event, become liable to the satisfaction of any debt contracted prior to the issuing of the patent." Syllabus, ¶ 3, Doran v. Kennedy, 59 L. ed. p. 996.

Under our Constitution the county court is vested with "exclusive original jurisdiction in probate and testamentary matter, the appointment of administrators and guardians, the settlement of the accounts

of executors, administrators, and guardians, the sale of lands by executors, administrators, and guardians; and such other probate jurisdiction as may be conferred by law." N. D. Const. § 111. Hence, it is manifest that the county court had jurisdiction to appoint a guardian for the minor children of Einar E. Myrdal, and to order a sale of the land belonging to them. In fact, it was the only court vested by the Constitution with original jurisdiction of those matters. There is no question but that the county court did in fact appoint a guardian, and that such guardian presented to the county court a petition wherein she asserted that for certain reasons the land of the minors ought to be sold. The petition also suggested that the best way to make the sale would be to set the property over to the guardian so as to enable her to make sale and convey it in her own name to the purchaser. While the procedure thus proposed (and later followed) was irregular and improper, the petition nevertheless asked the county court to act in a matter wherein it had unquestioned jurisdiction, viz., the sale of the property in a guardianship proceeding pending in that court. The fact that the county court erred in its determination did not oust it of jurisdiction either over the subject-matter or over the persons of the parties. The decree which it made still remained one made in a proceeding which it had jurisdiction to hear and determine. The petition filed asked the court to exercise its jurisdiction, and determine whether the facts averred entitled the petitioner to make a sale of the property of her wards. The court said that it did, and directed the sale to be made; in a manner, it is true, which was not warranted by the law. In so doing the court erred in the exercise of its judicial power. It made a mistake of law.

But it cannot be said as a matter of fact that the court did not act. Nor do we believe the actions of the court and of the guardian were such that it can be said as a matter of law that they have not acted, i. e., that their actions were wholly null and void, and that hence the case stands as though they had not acted at all. A guardian had been appointed. The wards had property. The existence of such property was called to the attention of the county court. The guardian asked the court permission to dispose of that property. The court in effect said to the guardian, I set the property over to you so as to enable you to convey it when you find a purchaser. I also require that you furnish a bond to insure that the wards will receive their shares of the purchase

price.  The guardian furnished the bond.  She made the sale.  The purchaser and his successors have been in possession and exercised dominion ever since.

Many of the states have statutes somewhat similar to § 8923, supra. There are many adjudicated cases wherein such statutes have been construed.  No good purpose would be accomplished by discussing the statutes of other states, or the decisions construing them.  Many of the decisions are collated in a note in 8 L.R.A.(N.S.) pages 354 et seq. We are concerned alone with our own statute, which says that "no action for the recovery of any property sold by a guardian can be maintained . . . unless it is commenced within three years next after the termination of the guardianship."  The operation of the statute manifestly is not limited to valid sales.  Such sales do not need the protection of such a statute.  The statute was intended to apply in certain cases where sales had been made, and where, on account of irregularities, the sale would be subject to attack unless the bar of the statute was interposed.  Upon the actual facts of the case before us, we are of the opinion that the bar of this statute is effectual.  The guardian of the appellants unquestionably sold their property.  She sold it in the manner the county court had said she might sell it.  It is the avowed purpose of the appellants to recover such property in this action.  For reasons stated above we believe that their cause of action is barred by the statute.  The judgment appealed from must therefore be affirmed. It is so ordered.