## JOHN GRANGER v. CITY OF MINNEAPOLIS AND OTHERS.[1]

December 19, 1930.

No. 28,258.

*Tifft, Youngdahl & Youngdahl,* for appellant.

*Neil M. Cronin,* City Attorney, and *William H. Morse,* Assistant City Attorney, for respondents.

STONE, J.

In this taxpayer's action, plaintiff's motion for a preliminary injunction to enjoin the enforcement of the ordinance hereinafter discussed was heard on complaint, answer, and affidavits. It was denied, and plaintiff appeals. The ordinance attacked, passed by the city council of Minneapolis February 28, 1930, is entitled: "An ordinance relating to and designating and redesignating the ward

[1]Reported in 233 N. W. 821.

boundaries of the several wards of the city of Minneapolis." The council's power so to reapportion the city plaintiff denies.

Minneapolis adopted a home rule charter November 2, 1920. The existing division of the city into 13 wards was confirmed and the ward boundaries designated by the new charter. There was no express indication of the manner in which or the authority by which the city was to be redistricted if and when the occasion should arise. The charter can be amended only on the proposal of the charter commission and the approval of a popular vote. G. S. 1923 (1 Mason, 1927) § 1286.

Notwithstanding the absence from the charter itself of any language conferring upon the city council the power of reapportionment, its possession is asserted because the charter continued to the council the authority given it by L. 1919, p. 217, c. 221. By that act the city council of any city of the first class, having a population of over 50,000, and not governed by home rule charter, was authorized by ordinance "to designate and redesignate the ward boundaries of such cities so as to keep the population of the various wards of such cities as nearly as may be equal." So, before the adoption of its home rule charter, the city council of Minneapolis had the power to reapportion.

After declaring expressly that 49 designated existing statutes should continue as part of the new charter, that document went on to provide (c. XX, § 2) as follows:

"The city of Minneapolis and the several boards and departments of said city, in addition to all the rights, powers, duties, functions, privileges, and immunities expressly conferred upon and vested in them or any of them under and by virtue of the provisions of this charter, shall under this charter also have, possess, perform, exercise, and enjoy all other rights, powers, duties, functions, privileges, and immunities held, possessed, performed, exercised, or enjoyed by said city and its several departments and boards respectively at the time of the adoption of this charter."

Unless by this omnibus preservation of former competence there has been saved to the city council the power of reapportionment, that

body does not have it. But we think that the power was preserved. The careful enumeration of existing statutes, the benefits of which the framers of the charter wanted to make sure of preserving, was apparently considered not quite enough. The intention, and that is the controlling thing, plainly was to preserve, undiminished, all the powers conferred by the laws then in force upon any board or department of the city. The language is general and inclusive. Were we now to read into it by construction an exception of the power conferred upon the council by the Laws of 1919, we would be to that extent amending it, which is beyond our power.

That conclusion disposes of the case. The home rule charter read as one instrument, as it must be, is to the effect, so far as reapportionment is concerned, that while the division into wards and their boundaries was confirmed or established by the charter, it was subject to the power reserved to the council from time to time "to designate and redesignate the ward boundaries * * * so as to keep the population of the various wards * * * as nearly as may be equal." That conclusion accords well with general practice. The task of reapportionment, as increases and shifts of population require, is everywhere left to ordinary legislation rather than the relatively unchangeable fundamental law of constitution or charter.

The charter is of course, as argued for plaintiff, supreme within its field. But like other laws, it seems to require construction from time to time. That is our present task—nothing more. We had a similar problem in Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627. The council is not in effect amending the charter. It is only exercising a charter power. Amish v. City of Phoenix, —— Ariz. ——, 282 P. 42.

Order affirmed.