# JOHN W. MITCHELL v. CITY OF ST. PAUL AND ANOTHER.[1]

February 25, 1949.

No. 34,830.

---

[1]Reported in 36 N. W. (2d) 132.

*Bundlie, Kelley, Finley & Maun* and *Mandt Torrison,* for appellant.

*Bruce J. Broady* and *William M. Serbine,* for respondents.

PETERSON, JUSTICE.

Plaintiff, the owner of land bordering on Vadnais Lake in Ramsey county, sues the city of St. Paul and its board of water commissioners for wilful and intentional trespass upon his land by raising the water in the lake above the ordinary high level thereof by artificial means and controls. Attached to and made a part of the complaint is a copy of a letter written by plaintiff to the commissioner of public utilities of the city, who is ex officio chairman of the board, notifying him of the trespass. It was conceded upon the argument that the letter was insufficient under § 35 of § 455 of the city charter as a notice of claim against the board and under M. S. A. 465.09 as one against the city. Defendants separately demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. Plaintiff appeals from the order sustaining the demurrers.

The appeal presents four questions for decision:

(1) Whether the city of St. Paul is exonerated from liability for torts committed by the board of water commissioners by provisions of the city charter of St. Paul to the effect that the board of water commissioners may sue and be sued; that a cause of action based on an act or omission of the board, its servants, agents, or employes, shall be brought and maintained by the claimant against the board, anything in the statutes of the state to the contrary notwithstand-

ing; and that any judgment against the board shall be paid out of any of its moneys in the hands of the city treasurer;

(2) Whether § 465.09, governing the necessity for presenting a notice of claim against cities has superseded and repealed § 35 of § 455 of the city charter of St. Paul, relating to the necessity for and manner of presentation of claims to the board of water commissioners;

(3) Whether it is necessary under § 465.09 for a claimant to serve notice of claim for trespass by raising the water of a lake; and

(4) Whether the defense of *res judicata* by a prior judgment of this court not referred to in the complaint can be raised by demurrer.

The answers to these questions depend partly on provisions of the city charter of St. Paul and partly on § 465.09, governing the necessity and manner of presenting notice of claim against a city for torts committed by it.

In 1900, the city adopted a home rule charter (see, State ex rel. Smith v. City of St. Paul, 128 Minn. 82, 150 N. W. 389), which provides for a board of water commissioners and defines its status, powers, and duties. The city charter provides that the board shall be composed of the city's commissioners of public utilities, public works, and finance as ex officio members thereof (§ 451); that it shall be a "department" of the city "subject and subordinate" to the city charter and ordinances and resolutions adopted in pursuance thereof (§ 452); that the city council shall have the power, among others, to fix rates and to regulate the use and distribution of water (§ 459), to prescribe the manner of and to provide for the laying of water mains (§ 462), and to prescribe and to provide for the better conduct and regulation of the water department (§ 463); and that with the approval of the city council the board may extend its lines or make new ones in order to furnish the city with an adequate supply of water (§ 454). There are numerous other provisions, which we do not deem it necessary to enumerate. Section 455 of

the charter provides that numerous sections of Sp. L. 1885, c. 110, shall be "continued in full force, adopted herein and made part of this charter," among which are:

"Sec. 34. And all causes of action, either at law or in equity, which may now exist, or which may hereafter occur by reason of any act or omission by or on the part of the board of water commissioners, or of any of its servants, agents, employes or otherwise, shall be brought and maintained by such claimant or claimants against the said board of water commissioners, anything in the statutes of the State of Minnesota to the contrary notwithstanding. And any and all judgments recovered against said board of water commissioners shall be paid out of any moneys in the hands of the city treasurer of the City of St. Paul belonging to said board, as other indebtedness are paid."

and

"Sec. 35. Before any action shall hereafter be maintained in any court of this state having jurisdiction thereof, against said board of water commissioners, for any cause whatever, the subject matter thereof, together with the evidence in support of the same, must have first been presented and submitted to said board for its investigation and approval, and that, too, within sixty (60) days after said cause of action accrues. If, upon and after such investigation by said board, the same shall by it be rejected, then and in that case action thereon must be commenced within one (1) year thereafter, or forever be barred from maintaining an action thereon, or recovering a judgment against said board upon said claim or cause of action."

By Sp. L. 1881, c. 188, the city of St. Paul was authorized to acquire in its name a privately owned water company then serving the city and to pay for the same with public funds. Provision was made in c. 188 for the creation of a board of water commissioners, composed of five members, as an agency to operate and maintain the waterworks. Section 5 thereof, which authorized the board to enter into contracts in its own name, contained a provision as follows:

"* * * all contracts and engagements, acts and doings of the said board within the scope of their duty or authority shall be obligatory upon, and be in law as binding as if done by the common council of said city."

Sp. L. 1883, c. 75, amended c. 188 in numerous respects not here material. Sp. L. 1885, c. 110, consolidated and amended Sp. L. 1881, c. 188, and Sp. L. 1883, c. 75. Chapter 110 repealed the quoted portion of § 5 of c. 188, *supra,* and added, among other provisions, §§ 34 and 35, quoted *supra.*

■ It is for the legislature to determine whether a city shall be liable for the torts of a city department performing functions of the city government, whether the department shall be solely liable for torts committed by it, or whether both the city and the department shall be liable for the department's torts. Scott v. Village of Saratoga Springs, 199 N. Y. 178, 92 N. E. 393; Henry v. City of Saratoga Springs, 171 App. Div. 827, 155 N. Y. S. 942. By providing in Sp. L. 1885, c. 110, § 34, that causes of action based on acts or omissions of the board, its servants, agents, or employes, shall be brought and maintained by the claimant against the board, anything in the statutes of the state to the contrary notwithstanding, a legislative intent was clearly evinced that the board, and not the city, shall be liable for the board's torts. In Scott v. Village of Saratoga Springs, *supra,* statutory provisions similar to those of § 34 were construed, and the court held that it seemed "too plain for judicial construction" (199 N. Y. 185, 92 N. E. 395) that such provisions rendered the department solely liable, with the consequence that the village was not liable at all. So it is here. In the Scott case, however, it appeared that the statute expressly provided that the city department involved shall be a body corporate, whereas c. 110 did not so provide; but we deem this difference to be of no consequence, for the reason that, aside therefrom, the plain meaning of the language of § 34 is that the board, and not the city, shall be liable for the board's torts. This meaning is emphasized by the further provision that any judgment recovered against the board in

such an action shall be paid out of the moneys belonging to the board in the hands of the city treasurer.

That this is the meaning of § 34 is also clear from its legislative history. The provision of Sp. L. 1881, c. 188, § 5, quoted above, to the effect that all contracts, acts, and doings of the board shall be obligatory upon and in law as binding as if done by the common council of the city, which is substantially the same as the provision of the home rule charter of Waseca construed in American Elec. Co. v. City of Waseca, 102 Minn. 329, 113 N. W. 899, was construed by us in Morton v. Power, 33 Minn. 521, 24 N. W. 194, the same as the provision of the Waseca charter was construed in the American Elec. Co. case, *supra*, to render both the city and the board liable. Sp. L. 1885, c. 110, simultaneously repealed Sp. L. 1881, c. 188, § 5, and enacted § 34. The legislative process involved repeal of a statute under which the city was liable and enactment of one under which it was not liable. Section 455 of the charter continuing Sp. L. 1885, c. 110, § 34, in full force, adopting it and making it part of the charter, was an exercise of local legislative power. The adoption of a home rule city charter constitutes the exercise of legislative power, with the consequence that the charter is in the nature of a local statute. Almquist v. City of Biwabik, 224 Minn. 503, 28 N. W. (2d) 744; City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779; State ex rel. City of St. Paul v. Oehler, 218 Minn. 290, 16 N. W. (2d) 765; Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627; 4 Dunnell, Dig. & Supp. § 6537. See, State v. Ritschel, 220 Minn. 578, 20 N. W. (2d) 673, 168 A. L. R. 274. As a consequence, § 34 remained in force as law without repeal or change. Tanner v. Civil Service Comm. 211 Minn. 450, 1 N. W. (2d) 602; Granger v. City of Minneapolis, 182 Minn. 147, 233 N. W. 821; State ex rel. Zien v. City of Duluth, 134 Minn. 355, 159 N. W. 792, Ann. Cas. 1918A, 683; 4 Dunnell, Dig. & Supp. § 6538.

It follows, therefore, that the adoption of § 34 as part of § 455 of the city charter constitutes local legislation by the city to the effect that the city shall not be liable for the board's torts and that the board shall be solely liable therefor.

■ Prior to the enactment of L. 1897, c. 248, statutes, special laws, and city charters contained dissimilar provisions as to presentation of notice of claim against municipalities and the method and procedure of presenting the same, with resulting confusion, which that statute was enacted to remedy. Chapter 248 in effect provided that before a city, village, or borough shall be liable for negligence the claimant within 30 days shall present to the governing body thereof a notice of claim stating when and where the loss or injury occurred, the circumstance thereof, and the amount of compensation or the nature of the relief demanded. Thereby, a uniform rule, avoiding the confusion arising out of dissimilar provisions then in effect, was prescribed for all municipalities. Freeman v. City of Minneapolis, 219 Minn. 202, 17 N. W. (2d) 364. The effect thereof was to repeal and supersede all statutory and charter provisions governing the matter then in force. Johnson v. City of Duluth, 133 Minn. 405, 158 N. W. 616. In Nicol v. City of St. Paul, 80 Minn. 415, 83 N. W. 375, we held that c. 248 superseded and repealed Sp. L. 1885, c. 7, § 19, which was then part of the city charter of St. Paul, and governed the matter of presenting notice of claim against the city for negligence. This case was decided in 1900, but it arose prior to the adoption in that year of the city's home rule charter.

In 1907, we held in Peterson v. City of Red Wing, 101 Minn. 62, 111 N. W. 840, that a home rule charter provision governing the presentation of notice of claim against the city adopted subsequent to the enactment of c. 248 was valid as an exercise of legislative power with respect to matters "germane to the subject of municipal legislation" possessed by the voters in adopting a home rule charter.

While the home rule charter of St. Paul was adopted in 1900, and probably under the rule of the Peterson case operated as a reënactment of L. 1885, c. 110, § 35, no such claim was made here; but if it had been made it would have been of no avail, for the reason, as we shall presently show, that L. 1913, c. 391, operated to supersede and repeal it.

L. 1913, c. 391 (effective July 1, 1913), repealed R. L. 1905, § 768, which was L. 1897, c. 248, "and all other acts and parts of acts in-

consistent" therewith. Section 768 (c. 248) was reënacted as § 1 of c. 391. Unlike § 768 (c. 248), c. 391 contained a provision (§ 5) that it shall apply to cities having home rule charters. Aside from the question as to what the effect of the simultaneous repeal and reënactment of § 768 may have been under the rule that the effect of simultaneous repeal and reënactment of a statute is to continue the repealed statute in force without interruption (§ 645.37; State ex rel. Markham v. Elmquist, 201 Minn. 403, 276 N. W. 735; Brown v. Pinkerton, 95 Minn. 153, 103 N. W. 897, 900, 111 A. S. R. 448), § 5, providing that c. 391 shall apply to cities having home rule charters, operated as a new statutory enactment (Kerlinger v. Barnes, 14 Minn. 398 [526]; G. N. Ry. Co. v. United States [8 Cir.] 155 F. 945, affirmed, 208 U. S. 452, 28 S. Ct. 313, 52 L. ed. 567), from the effective date of the statute. Thus, c. 391 applied to all cities having home rule charters on that date. Since the city of St. Paul then had a home rule charter, the statute applied to it.

Chapter 391, §§ 1, 2, 3, and 5, as supplemented by an act not material here (L. 1943, c. 525, § 1), is now M. S. A. 465.09 to 465.12. Section 465.09 (c. 391, § 1), as we have held in the Freeman case (219 Minn. 202, 17 N. W. [2d] 364) and the cases there cited, was intended to prescribe a uniform rule throughout the state, and, like its predecessor (L. 1897, c. 248), operated, under the rule of the Nicol case (80 Minn. 415, 83 N. W. 375), to repeal and supersede all charter provisions of the city of St. Paul relating to the same subject matter. As held in Eastlick v. City of Los Angeles, 29 Cal. (2d) 661, 177 P. (2d) 558, 170 A. L. R. 225, and Annotation, such a statute evinces a legislative intention to regard the matter of presenting notice of claim against municipalities as one of state-wide importance and to occupy the entire field by a state regulation to the exclusion of those local in character.

The point is made that § 465.09 by its terms applies to "cities"; that, because that is true, the statute applies only to *cities* as such; and that, because the board is not a city but only a department of one, the statute does not apply to the board. We think that there is such identity between the city and the board that, except as other-

wise provided, a statute applicable to the city applies to the board. Because of the relationship of the board to the city, there is such identity between them that the board's powers and functions are exercised in subordination to those of, and are governed by law applicable to, the city. This is settled by our decision in Board of Water Commrs. v. Roselawn Cemetery, 138 Minn. 458, 165 N. W. 279, where the question was whether the board's right to exercise the power of eminent domain was under the statutes as an "incorporated place" or under the city charter as a department of the city. We held it was the latter, and said (138 Minn. 461, 165 N. W. 280):

"* * * and the board of water commissioners is not an entity separate and independent of the city, but a mere agency or department of the city provided for and governed by the city charter; and its authority to exercise the power of eminent domain rests upon such charter and must be exercised thereunder. As condemnation proceedings brought by the city itself do not come under chapter 41, neither do those brought under the charter of the city by the subordinate agencies of the city, in the absence of a statute to that effect."

There the question was determined under provisions of the city charter; but the rule is the same where it arises under a statute. In Morton v. Power, 33 Minn. 521, 24 N. W. 194, *supra,* which arose under Sp. L. 1881, c. 188, § 5, before the enactment of Sp. L. 1885, c. 110, § 34, we said (33 Minn. 523, 24 N. W. 195):

"* * * The contracts which the board is thus authorized to make, though made in the name of the board, are made by it as the representative and agent of the city, and therefore they are, in substance and effect, made *with* as well as *for* the city."

Section 34, as we have pointed out, is an instance of where it is "otherwise" provided by statute. We think that because it was the legislative intent of § 465.09 to prescribe by statute a uniform general rule governing the matter of presentation to municipalities of notice of claim, to the exclusion of local regulation thereof, in order

to avoid the confusion arising out of dissimilar special and local ones, it was the legislative intention to repeal and supersede special and local rules applicable to boards of cities the same as those applicable to cities as such, and that the statute applies to a department of the city where it is liable for torts committed by it the same as it applies to a city where it is liable in similar cases. It follows, therefore, that § 465.09 repealed and superseded § 35 of § 455 of the city charter. Section 465.09 governs both as to the necessity and the manner of presentation of notice of claim against the board. The board stands in precisely the same situation as the city does with respect to the matter, notwithstanding the provisions of § 35 of § 455 of the city charter to the contrary. Such a construction, it seems to us, best effectuates the intention of the legislature.

Because Biron v. Board of Water Commrs. 41 Minn. 519, 43 N. W. 482, was decided under Sp. L. 1885, c. 110, § 35, it is not in point. As has been pointed out, § 35 has been repealed and superseded by § 465.09.

■ Presentation of notice of claim for trespass is not required under § 465.09. H. Christiansen & Sons, Inc. v. City of Duluth, 225 Minn. 475, 31 N. W. (2d) 270. Hence, none was required here.

■ The complaint did not in any way refer to our decision in Mitchell v. City of St. Paul, 225 Minn. 390, 31 N. W. (2d) 46. The judgment of an appellate court is *res judicata* of the questions litigated and decided the same as any other judgment. Ferch v. Hiller, 210 Minn. 3, 297 N. W. 102. *Res judicata* is an affirmative defense to be asserted by answer. McClellan v. Louis F. Dow Co. 114 Minn. 418, 131 N. W. 485; Swank v. St. Paul City Ry. Co. 61 Minn. 423, 63 N. W. 1088. There was no answer here. It is elementary, of course, that a demurrer to a complaint raises only those questions which appear from the face of the complaint. Hence, a demurrer does not raise the question whether a former judgment not set forth in the complaint is *res judicata.* Acree v. Bandy, 20 Ga. App. 133, 92 S. E. 765; 49 C. J., Pleading, § 535. The demurrer therefore did not raise the question whether our decision in the Mitchell case, *supra,* was *res judicata.*

Our conclusion is that the order should be affirmed insofar as it sustains the city's demurrer and that it should be reversed insofar as it sustains the demurrer of the board of water commissioners.

Affirmed in part and reversed in part in accordance with opinion.

